# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

---------------------------------------------------------x
ARTHUR L. BRASHER, *et al.*,

          Plaintiffs,

          v.

BROADWIND ENERGY, INC., *et al.*,

          Defendants.
---------------------------------------------------------x

Case No. 11-CV-0991

Honorable James B. Zagel

### TONTINE DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

    I.   PLAINTIFFS FAIL TO ALLEGE THAT TONTINE ACTUALLY EXERCISED GENERAL CONTROL OVER BROADWIND'S OPERATIONS................................... 3

        A.     Plaintiffs' "Controlling Shareholder" Allegations Are Insufficient ....................... 3

        B.     Plaintiffs' Remaining Allegations Are Insufficient ................................................ 8

    II.  PLAINTIFFS FAIL TO ALLEGE THAT TONTINE HAD THE SPECIFIC ABILITY TO CONTROL BROADWIND'S PUBLIC DISCLOSURES OR THE OFFERING..... 12

    III. PLAINTIFFS FAIL TO ALLEGE THAT DEFENDANT GENDELL CONTROLLED BROADWIND ........................................................................................................... 14

CONCLUSION...................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Aldridge v. A.T. Cross Corp.*,
   284 F.3d 72 (1st Cir. 2002).................................................................................................3, 7, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009)....................................................................................5, 15

*Barber v. LM Prop. & Cas. Ins. Co.*,
   782 F. Supp. 2d 628 (N.D. Ill. 2011) ............................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................5, 15

*Caruso v. Metex Corp.*,
   No. CV 89-0571, 1993 WL 305945 (E.D.N.Y. July 1, 1993) .....................................................6

*Desai v. Gen. Growth Props., Inc.*,
   654 F. Supp. 2d 836 (N.D. Ill. 2009) ...................................................................................11, 14

*Donohoe v. Consol. Operating & Prod. Corp.*,
   30 F.3d 907 (7th Cir. 1994).........................................................................................................4

*Donohoe v. Consol. Operating & Prod. Corp.*,
   982 F.2d 1130 (7th Cir. 1992)...................................................................................................11

*Harrison v. Dean Witter Reynolds, Inc.*,
   79 F.3d 609 (7th Cir. 1996).......................................................................................................11

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000).....................................................................................................6

*Metge v. Baehler*,
   762 F.2d 621 (8th Cir. 1985).....................................................................................................10

*In re Motel 6 Sec. Litig.*,
   161 F. Supp. 2d 227 (S.D.N.Y. 2001).........................................................................................9

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003).......................................................................................................6

*Schlifke v. Seafirst Corp.*,
   866 F.2d 935 (7th Cir. 1989)..................................................................................................9, 10

*Silverman v. Motorola, Inc.*,
   772 F. Supp. 2d 923 (N.D. Ill. 2011) ...............................................................................13

*In re Spiegel, Inc. Sec. Litig.*,
   382 F. Supp. 2d 989 (N.D. Ill. 2004) ..................................................................................7

*Superior Vision Servs., Inc. v. ReliaStar Life Ins. Co.*,
   No. Civ. A. 1668-N, 2006 WL 2521426 (Del. Ch. Aug. 25, 2006).............................................4

*Theoharous v. Fong*,
   256 F.3d 1219 (11th Cir. 2001), *abrogated on other grounds by*
    *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010)............................................................3, 7, 8

*In re Tronox Inc. Sec. Litig.*,
   769 F. Supp. 2d 202 (S.D.N.Y. 2011)..................................................................................6

*In re W. Nat'l Corp. S'holders Litig.*,
   No. 15927, 2000 WL 710192 (Del. Ch. May 22, 2000) ............................................................7

*Zishka v. Am. Pad & Paper Co.*,
   No. Civ.A.3:98-CV-0660-M, 2001 WL 1748741 (N.D. Tex. Sept. 28, 2001),
   *aff'd on other grounds*, 72 F. App'x 130 (5th Cir. 2003) .......................................... 3-4, 7, 8, 12

## **STATUTES**

The Securities Exchange Act of 1934 ("Exchange Act"),
   Exchange Act § 10(b), 15 U.S.C. § 78j(b) (2012).................................................................1, 2

   Exchange Act § 20(a), 15 U.S.C. § 78t(a) (2012) ........................................................... *passim*

## **PROCEDURAL RULES**

Fed. R. Civ. P. 8................................................................................................................15

Fed. R. Civ. P. 12(b)(6).........................................................................................................1

The Tontine Defendants respectfully submit this reply memorandum in response to Plaintiffs' Memorandum of Law in Opposition to Tontine Defendants' Motion to Dismiss Amended Class Action Complaint (the "Opposition" or "Pl. Br.") and in further support of the Tontine Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## **INTRODUCTION**

There is no dispute that in order to state a control person claim, Seventh Circuit law demands that Plaintiffs first have to adequately plead an underlying securities law violation, and then must allege facts showing that the Tontine Defendants (1) *actually exercised* control over the general operations of Broadwind *and* (2) had the *specific ability* to control the Offering and Broadwind's accompanying public disclosures. (Tontine Br. at 7; Pl. Br. at 11-12, 15). Even assuming Plaintiffs could clear the initial hurdle of successfully pleading an underlying Section 10(b) violation – which, for the reasons demonstrated in the Broadwind Defendants' memoranda, they cannot – Plaintiffs fail to refute Tontine's demonstration that the Complaint's allegations fall short of satisfying either prong of the two-part test for "control."

On the contrary, the Opposition all but ignores the plain mandate under the first prong of the two-part test that Tontine must have *actually exercised* control over Broadwind's general operations, and for good reason. The Complaint pleads nothing, and the Opposition argues nothing, indicating that to have been the case. As demonstrated in Tontine's opening brief, Tontine's status as a large shareholder of Broadwind and ability to nominate directors to Broadwind's Board do not suffice to show control. Despite feeble attempts to distinguish or disparage Tontine's cited authority dismissing Section 20(a) claims in similar circumstances, Plaintiffs ultimately retreat to arguing that they "have alleged much more." (Pl. Br. at 14). Yet,

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Tontine Defendants' opening brief filed on November 18, 2011 (Dkt. No. 67) ("Tontine Br.").

as explained in Tontine's opening brief, the Complaint's 127 pages of allegations, including its six confidential witness statements, say virtually nothing about Tontine, and what little there is does not even remotely evince that Tontine actually exercised control over Broadwind's general operations. The Opposition offers no argument, and no supporting authority, refuting that conclusion.

Likewise, other than Plaintiffs' unilateral say-so, the Opposition offers nothing supporting a conclusion that Tontine had the specific ability to control either Broadwind's public disclosures or the Offering. Instead, Plaintiffs merely repeat the Complaint's conjecture that the Offering would not have occurred without the Tontine Defendants' "undue influence" and that Tontine and/or the directors it nominated to the Broadwind Board "must have known" of declining customer forecasts and the forthcoming impairment charges. (Pl. Br. at 16-17). But Plaintiffs do not and cannot dispute that the Offering was conducted at a time when the Company itself desperately needed to raise capital to meet its liquidity needs. Nor do they so much as try to square their "undue influence" theory with Tontine's pre-existing contractual right to sell its Broadwind shares in an underwritten offering with or without the Board's approval. Wholly lacking from both the Complaint and the Opposition are the requisite non-conclusory allegations of fact showing that Tontine, as an outside investor, had the power to control the Company's public disclosures which form the basis for Plaintiffs' Section 10(b) claim.

Measured against the governing legal standard, Plaintiffs have failed to state a claim for control person liability against the Tontine Defendants. Accordingly, even if Plaintiffs were able to state an underlying Section 10(b) claim against Broadwind, the Section 20(a) control claim against both the Tontine Funds and Jeffrey Gendell still fails.

# ARGUMENT

## I. PLAINTIFFS FAIL TO ALLEGE THAT TONTINE ACTUALLY EXERCISED GENERAL CONTROL OVER BROADWIND'S OPERATIONS

As explained in Tontine's opening brief and confirmed in the Opposition, Plaintiffs' allegations of general control fall into two categories. First, Plaintiffs assert that the Tontine Defendants were Broadwind's "controlling shareholders" because they owned approximately 47.7% of the Company's stock and nominated three directors to the Board. (Compl. ¶¶ 22-24, 26-29, 35, 285). Second, Plaintiffs point to a handful of scattered references to Tontine in Broadwind's public filings and in vague characterizations attributed to a single confidential witness. (*Id.* ¶¶ 35, 59-61, 105, 256). Conceding that this mélange of allegations "may not be dispositive on the issue of control," Plaintiffs nonetheless argue that, "[w]hen viewed in totality," they support an "inference" that the Tontine Defendants actually exercised control over the operations of Broadwind. (Pl. Br. at 13, 16). Plaintiffs are wrong.

### A. Plaintiffs' "Controlling Shareholder" Allegations Are Insufficient

As explained in Tontine's opening brief, Plaintiffs' efforts to label the Tontine Defendants as Broadwind's "controlling shareholder" and use of the convention "Tontine Affiliated Defendants" to describe certain Broadwind directors do nothing to assist Plaintiffs in showing that Tontine actually exercised control over Broadwind's general operations. The case law is clear: Allegations that a shareholder owns a large percentage of the company's stock and has the ability to nominate directors are insufficient to plead a claim for control person liability under Section 20(a). (Tontine Br. at 9-13).[2] Plaintiffs' arguments are flatly inconsistent with

---

[2] *See, e.g., Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) (majority shareholder with right to select two-thirds of board); *Theoharous v. Fong,* 256 F.3d 1219, 1227-28 (11th Cir. 2001) (39% shareholder with right to nominate four directors), *abrogated on other grounds by Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010); *Zishka v. Am. Pad & Paper Co.*, No. Civ.A.3:98-CV-0660-M,

3

this case law and completely insufficient to establish the "general control" prong of the Seventh Circuit's two-part test.

First, Plaintiffs challenge Tontine's showing that Tontine was not, in fact, a "controlling shareholder" as alleged in the Complaint. But Plaintiffs do not even attempt to argue that Tontine *was* a "controlling shareholder" as that term is defined under Delaware corporate governance law. Rather, they argue that whether Tontine was a controlling shareholder "has no bearing on the [control person] issue" and that Tontine's cited authority has "no application here because Plaintiffs assert claims under the federal securities laws." (Pl. Br. at 13). This argument is puzzling, since it is Plaintiffs who injected this issue by repeatedly referring in their Complaint to the Tontine Defendants as Broadwind's "controlling shareholder" in apparent support of their Section 20(a) claim. (*See* Compl. ¶¶ 22-23, 35, 254, 267).

In any event, Plaintiffs' argument misses the point. Under Delaware law, no less than under the Seventh Circuit's test for control person liability, the Tontine Defendants' ownership of under 50% of Broadwind's common stock (Compl. ¶¶ 22-23) allows them to be considered "controlling shareholders" *only if they actually exercised* control over the Company. *See, e.g., Superior Vision Servs., Inc. v. ReliaStar Life Ins. Co.*, No. Civ. A. 1668-N, 2006 WL 2521426, at *4 (Del. Ch. Aug. 25, 2006) (minority stockholders are not controlling shareholders absent well-pled allegations establishing "the *actual exercise* of control over the corporation's conduct") (emphasis in original) (internal quotation marks and citations omitted); *compare, e.g., Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 911-12 (7th Cir. 1994) (control person liability requires well-pled allegations that, among other things, one "*actually* exercised general control over the operations of the wrongdoer") (emphasis in original).

---

2001 WL 1748741, at *1 (N.D. Tex. Sept. 28, 2001) (38-50% shareholder during class period with right to nominate three directors), *aff'd on other grounds*, 72 F. App'x 130 (5th Cir. 2003).

Thus, the Complaint's suggestion that Plaintiffs' bald characterization of Tontine as Broadwind's "controlling shareholder" somehow supports an inference that Tontine in fact actually exercised general control in the Section 20(a) context – a suggestion reiterated in the Opposition (Pl. Br. at 1, 3-4, 5, 13) – is simply untenable. Absent well-pled allegations that Tontine *actually exercised* control over Broadwind's operations, Tontine's 47.7% ownership position makes it neither a "controlling shareholder" for purposes of Delaware corporate governance nor a "controlling person" for purposes of Section 20(a). Even under the *Twombly/Iqbal* pleading standard, Plaintiffs' "labels and conclusions" do not suffice to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); *see also Barber v. LM Prop. & Cas. Ins. Co.*, 782 F. Supp. 2d 628, 629 (N.D. Ill. 2011) (court "not obligated to accept the truth of legal conclusions or unsupported conclusions of fact").

Plaintiffs also belatedly attempt to allege that Tontine effectively controlled a majority of Broadwind's stock, claiming that, in addition to their own 47.7% ownership interest, "the Tontine Defendants had proxy over Defendant Fox's shares, totaling in [*sic*] more than 50% of the voting shares." (Pl. Br. at 13). Notably, the Opposition's allegations that Fox "owned 5.3% of Broadwind's shares" (*id.* at 5) and that, by virtue of its March 2007 proxy agreement with Mr. Fox, Tontine controlled a total of "more than 50%" of the total shares (*id.* at 13) appear nowhere in the Complaint itself or in the record before the Court. But it would not matter if they did. Plaintiffs' premise – that Tontine had a general proxy to vote Mr. Fox's shares for all purposes – is demonstrably false and belied by the very document on which it is based.

As explained in Tontine's opening brief and ignored in the Opposition, the March 2007 proxy agreement was extremely limited, giving Tontine the ability to vote Mr. Fox's shares *only* in connection with enforcing Tontine's Board nomination rights and certain other

5

contractual rights that Tontine had to purchase additional shares of Broadwind common stock. (*See* Tontine Br. at 13 n.7; Ex. O at 79). The March 2007 agreement gave Tontine *no* proxy rights with respect to the Company's general operations. Thus, it does nothing to establish Tontine's actual control (or even ability to control) the Company's general operations.[3]

Accordingly, Tontine's status as a large stockholder fails to support a conclusion that Tontine actually exercised general control over Broadwind.[4] Similarly, Plaintiffs fail to articulate any basis under which Tontine's right to nominate three directors to the Broadwind Board supports that conclusion. Instead, as with its controlling shareholder allegations, Plaintiffs argue that Tontine's reliance on Delaware law to show that Tontine's nomination of these directors does not impugn the ability of those directors to act independently "is again misplaced . . . because none of the cases cited by Defendants concern the issue of 'control person' [liability] under a Section 20(a) claim." (Pl. Br. at 15). But, as before, Plaintiffs simply miss the point.

---

[3] Moreover, at the time of the Offering, there were 96,696,687 shares of Broadwind's common stock outstanding, of which Tontine owned 46,088,635 shares (or 47.66%) and Defendant Fox owned 2,245,175 shares (or 2.32%). (*See* Ex. O at 73). Thus, even as to the limited matters as to which the proxy applied (which did not include the Offering itself), Tontine still only had voting power over less than 50% of the Company's outstanding shares at the time of the Offering.

[4] Plaintiffs' reliance on two decisions from within the Second and Ninth Circuits to argue that some courts "have held that significant stock ownership supports an inference of control under Section 20(a)" (Pl. Br. at 14) is misplaced. Unlike the Seventh Circuit, neither Circuit's law requires the actual exercise of control in order to state a prima facie claim for control person liability. *See, e.g., In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 207 (S.D.N.Y. 2011) (noting that "'[a]ctual control is essential to control person liability. . . . [But] for purposes of Section 20(a) liability, actual control requires only the *ability* to direct the actions of the controlled person, and *not the active exercise thereof*'") (emphasis in original) (internal quotation marks and citations omitted); *Caruso v. Metex Corp.*, No. CV 89-0571, 1993 WL 305945, at *3 (E.D.N.Y. July 1, 1993) (plaintiffs "need not allege facts that would prove that the control person actually exercised the power to influence or control. Rather, they only need to allege the *power or potential to influence and control*") (emphasis in original) (internal quotation marks and citations omitted); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003) ("'[I]n order to make out a prima facie case, it is not necessary to show actual participation or the exercise of power; however, a defendant is entitled to a good faith defense if he can show no scienter and an effective lack of participation'") (alteration in original) (quoting *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)).

"Delaware courts have consistently rejected the notion that a director cannot act independently of the entity that appointed him or her to the Board." *In re W. Nat'l Corp. S'holders Litig.*, No. 15927, 2000 WL 710192, at *15 n.46 (Del. Ch. May 22, 2000). So too in the Section 20(a) context, courts have flatly rejected Plaintiffs' position that investors with significant stock holdings and board nomination rights were sufficiently alleged to have actually exercised control over a company. *Aldridge v. A.T. Cross Corp.*, 284 F.3d at 85; *Theoharous v. Fong,* 256 F.3d at 1227-28; *Zishka v. Am. Pad & Paper Co.*, 2001 WL 1748741, at *1. This is true even where *all* of the investor's board nominees were employees of the investor. *Zishka*, 2001 WL 1748741, at *1.[5] Here, two of the three directors nominated by Tontine, Messrs. Beynon and Fejes, were independent professionals who were never employed by Tontine (Tontine Br. at 12 n.6; Ex. O, at 76-77), and Plaintiffs allege *no* facts to suggest that Tontine actually exercised control over them. (*See* Compl. ¶¶ 26-27). And as *Zishka* confirms, despite the allegation that he was employed by a Tontine affiliate (*id.* ¶ 24), the result is no different with respect to Defendant Lindstrom.[6]

---

[5] The three directors named by Bain Capital to the board in *Zishka* were all principals or managing directors of Bain. *See* Complaint, *Zishka v. American Pad & Paper Co.*, No. 98CV0660-D, at ¶ 21(e), (f), (g) (N.D. Tex. filed Mar. 10, 1998) *available at* http://securities.stanford.edu/1011/AGP98/98cv00660.txt.

[6] Plaintiffs cite *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989 (N.D. Ill. 2004), for the proposition that a Section 20(a) claim is sufficiently alleged where a defendant places "loyal 'associates' in leadership positions" at a company. (Pl. Br. at 10). But *Spiegel* bears no resemblance to this case. In *Spiegel*, plaintiffs adequately pled a claim for control person liability against, among others, a director of the company who served as Chairman of the Board and of its Board and Audit Committees, was the "sole voting shareholder" of the company, "ensured that Spiegel's Board of Directors was comprised of 'interlocking directorships tied to other entities controlled by'" the defendant and his family, and hand-selected additional employees from other family businesses to serve in senior officer positions at the company. *Spiegel*, 382 F. Supp. 2d at 998, 1008 n.14, 1018, 1022. In that regard, the complaint contained detailed allegations establishing, among other things, the numerous outside business relationships between the defendant and his "loyal 'associates,'" and that the company's Board Committee (of which the defendant himself was a member) "routinely operated on behalf of the board." *Id.* at 998, 1018. Here, by contrast, neither Messrs. Beynon or Fejes had any outside affiliation with Tontine. And, of course, Plaintiffs do not allege that any person affiliated

7

Simply put, Plaintiffs cannot distinguish Tontine's stock holdings and board nomination rights from the substantially identical circumstances present in *Aldridge*, *Theoharous* and *Zishka*. As these cases recognize, no control person liability can be inferred from such circumstances, unless the complaint also pleads facts indicating that the shareholder "was actively participating in the decisionmaking processes of the corporation" so as to establish the *actual exercise* of general control. *Aldridge*, 284 F.3d at 85 (applying Seventh Circuit standard).

### B. Plaintiffs' Remaining Allegations Are Insufficient

Recognizing that neither Tontine's ownership of stock nor its ability to nominate directors are sufficient to establish the actual exercise of control over Broadwind's general affairs, Plaintiffs also argue that they "have alleged much more than the power to elect a majority of the Board or controlling shareholder status." (Pl. Br. at 14). But as explained in Tontine's opening brief, none of Plaintiff's other allegations, based on Broadwind's public disclosures and a single confidential witness (CI 1), supports a finding that Tontine actually exercised general control over Broadwind. (Tontine Br. at 13-16). The Opposition does not show otherwise.

For example, Plaintiffs point to the risk factor in Broadwind's Form 10-K advising investors that Tontine "holds a large percentage of our common stock and influences our affairs significantly." (Pl. Br. at 5, 12, 16). But that disclosure reflects nothing more than the fact that, "[a]s a result" of its stock ownership, "Tontine has the voting power to significantly influence [the Company's] policies, business and affairs," and the fact that Tontine had designated directors to the Board (Pl. Br. at 5; Compl. ¶ 35) – the very circumstances that, as demonstrated above, are insufficient to show control. Any 47.7% shareholder would be in a position to "influence" a company's affairs. But that allegation does not take Plaintiffs anywhere

---

with Tontine held any management position at Broadwind or "routinely operated on behalf of" its Board.

8

near the required showing that Tontine *actually* exercised *control* over Broadwind. *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 949 (7th Cir. 1989)("'the ability to persuade or give counsel is not the same thing as 'control,' which almost always means the practical ability to *direct* the actions of the people who issue or sell the securities'") (emphasis in original) (citation omitted); *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 238 (S.D.N.Y. 2001) ("[c]ontrol is not the same as influence" under Section 20(a)).

Similarly, Plaintiffs do not even attempt to explain how Broadwind's statements in its year-end 2008 Form 10-K or in a November 2008 press release that Tontine has "previously been the primary source of capital for acquisitions and expansion projects for the Company" and "has provided both financial support and leadership expertise to the Company" (Pl. Br. at 6, 12; Compl. ¶¶ 105, 256) reflect that Tontine in any way actually exercised control over Broadwind's general operations during the relevant time period. (*See* Tontine Br. at 14-15). Again, these statements reflect nothing more than the legally insufficient facts that Tontine was a large investor (as a result of having previously provided equity and debt capital to Broadwind) and had nominated directors to the Board (part of the Company's leadership).[7] Moreover, these statements describe events prior to the Class Period, and as Plaintiffs themselves allege, Tontine "stopped" investing money into Broadwind in 2008 and thereafter sought to dispose of its equity interest in the Company. (*See id.* at 15; Compl. ¶¶ 35, 74, 87, 105). Tontine's role in *previously* providing capital to Broadwind has no bearing on the question whether Tontine controlled Broadwind during the Class Period. *See, e.g., Schlifke*, 866 F.2d at 949 ("section 20(a) requires control at the time of the alleged violation"). And even if that role had continued into the Class

---

[7] The debt financing, provided by Tontine in 2007, was converted into equity in April 2008, nearly a year before the Class Period began. Tontine was not a creditor of Broadwind during the Class Period. (*See* Ex. O, at 81-83).

9

Period, it would be insufficient to show control. *See, e.g., Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985) (company's "primary lender" was not a control person), *cited with approval in Schlifke*, 866 F.2d at 949.

Plaintiffs' arguments based on CI 1's alleged statements fare no better. What is most striking about CI 1 is that he is the *only* one of Plaintiffs' confidential witnesses who are alleged to say *anything at all* about Tontine, notwithstanding Plaintiffs' self-described extensive pre-Complaint "investigation." (*See* Compl. at 1). Indeed, although CI 1 is described as a former "Vice President of Operations" who "interacted with Broadwind executives on a regular basis" (Compl. ¶ 58), the Complaint notably does *not* allege that he ever interacted with, ever met, or ever had a conversation with anyone at *Tontine*. On the critical question of whether Tontine actually exercised general control over Broadwind's operations, then, CI 1 would appear to be a witness for the defense.

The Opposition points to CI 1's reference to Tontine as Broadwind's "ownership group," his claim that it was Tontine's "vision" for the Company to acquire Brad Foote, and his assertion that Tontine "installed" Drecoll as Broadwind's CEO. (Pl. Br. at 12-16; Compl. ¶¶ 59-61). But it never explains how these allegations – even putting aside the fact that they are so vague as to be meaningless and are obviously not based on CI 1's direct knowledge – establish Tontine's actual control of Broadwind. All the Opposition argues is that, because Tontine purportedly "wanted to acquire [Brad Foote] no matter what," Mr. Drecoll "would have felt a sense of loyalty to the person who, as its main financial backer, invested millions of dollars in his company and was responsible for making him CEO of a public company." (Pl. Br. at 15-16).

But this argument is spurious. In addition to being rank speculation, whether Mr. Drecoll felt "a sense of loyalty" to Tontine stemming from Broadwind's October 2007

10

acquisition of Brad Foote completely fails to support "a logical inference that Tontine Defendants influenced Drecoll," as Plaintiffs insist (*id.* at 15), let alone that they controlled him. Further, Plaintiffs make no effort to explain how or why this "sense of loyalty" enabled Tontine to influence Mr. Drecoll at any point after Tontine announced its decision in November 2008 to sell its equity interests in Broadwind.

In the end, the Opposition concedes that the Complaint's allegations of general control "may not be dispositive on the issue of control," and for good reason. (*Id.* at 16). Even when stretched to their limit, the most that one can infer from the totality of Plaintiffs' allegations is that Tontine's status as a large Broadwind shareholder may have given it the ability to influence Broadwind's affairs at some point in time. (And even then, Plaintiffs simply ignore the dramatic change in Tontine's ability to influence Broadwind following its announcement, four months prior to the Class Period, that it intended to sell its Broadwind shares). More is required to survive dismissal.[8] *Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 862-63 (N.D. Ill. 2009) ("'[c]ourts within this District have consistently held that a plaintiff may not

---

[8] Plaintiffs argue that "[t]o establish control person liability, a plaintiff *need only show* that the defendant has 'the *practical ability* to direct the actions of the people who issue or sell the securities'" and that "[t]he Seventh Circuit has 'long recognized that some indirect *means* of discipline or influence, although short of actual direction, is sufficient to hold a control person liable.'" (*See* Pl. Br. at 10-11, 16 (emphasis added and citations omitted)). But this dramatically watered-down standard for control person liability finds no support in the cases Plaintiffs cite and should be rejected. In reality, both snippets to which Plaintiffs refer concern the second prong of the Seventh Circuit's two-part test, which unlike the first prong, does not require the *actual exercise* of control. Tellingly, and contrary to Plaintiffs' suggestion, the Seventh Circuit stated in *Donohoe* that "a plaintiff must show . . . 'the practical ability to direct the actions of the people who issue or sell securities" to establish control person liability, *not* that "a plaintiff *need only show*" the existence of that ability. *Donohoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130, 1138 (7th Cir. 1992). And while *Harrison* states that "some indirect *means*" of control "is sufficient *to hold a 'control person' liable*," *Harrison v. Dean Witter Reynolds, Inc*., 79 F.3d 609, 614 (7th Cir. 1996) (emphasis added), a defendant only qualifies as a control person if she actually exercised control over the company's operations. As explained in *Donohoe*, "[t]he court will look first to whether the alleged control person actually exercised general control over the operations of the entity principally liable" and "[c]ontrol person *liability will attach* if such a person possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, even if such power was not exercised." *Donohoe*, 982 F.2d at 1138 (emphasis added).

11

premise control person liability solely upon status within a company'") (citation omitted); *Zishka*, 2001 WL 1748741, at *1 ("Status alone as to persons not involved in day to day management is legally insufficient to support a Section 20(a) claim.").

## II. PLAINTIFFS FAIL TO ALLEGE THAT TONTINE HAD THE SPECIFIC ABILITY TO CONTROL BROADWIND'S PUBLIC DISCLOSURES OR THE OFFERING

The Opposition comes no closer to saving the Complaint's allegations that Tontine had the specific ability to control Broadwind's public disclosures or the Offering as required under the second prong of the "control" test. In fact, rather than responding directly to Tontine's arguments, Plaintiffs merely repeat the Complaint's conclusory allegations that the Offering "would have not occurred absent [Tontine's] undue influence," and that Tontine "must have known" of the need for early impairment testing through its Board nominees. (Pl. Br. at 16-17). Tellingly, the Opposition simply ignores Tontine's arguments demonstrating the defects with each of these allegations. (Tontine Br. at 16-19).

First, Plaintiffs' conclusory allegations that the Offering would not have occurred without Tontine's "undue influence" and was undertaken "in order to provide [Tontine] a means to dispose of a substantial portion of its shares in the Company" (Pl. Br. at 16) are not only legally insufficient, but demonstrably incorrect. Plaintiffs do not – and obviously cannot – dispute that the Offering was conducted at a time when Broadwind desperately needed to raise capital, and that through the Offering, Broadwind itself raised more than $54 million in capital. In fact, Broadwind expressly disclosed that if the Offering was *not* completed, it "may be unable to fund [its] working capital needs" and "could be forced into bankruptcy, liquidation or required to substantially restructure or alter [its] business operations and debt obligations." (*See* Tontine Br. at 17; Ex. O, at 49). Likewise, Plaintiffs do not contest that Tontine did not need approval from the Broadwind Board to sell its stock. The March 2007 Registration Rights Agreement,

12

while entirely ignored in the Opposition, gave Tontine the express right to sell its Broadwind shares through an underwritten offering regardless of whether the Company participated. (*See* Tontine Br. at 17; Ex. 2, at § 2.5(a)).

Second, Plaintiffs' suggestion that Tontine had the ability to control Broadwind's public disclosures because it "must have known" adverse undisclosed information is equally unavailing. (Pl. Br. at 16). Significantly, the Opposition offers no response at all to Tontine's argument that the Complaint fails to so much as suggest any role played by the Tontine Defendants in Broadwind's impairment testing process, or that they prepared, reviewed or commented upon any of the disclosures communicated in Broadwind's SEC filings, press releases or during its investor conference calls.[9] (Tontine Br. at 16). Rather, Plaintiffs attempt to impute knowledge to Tontine through its Board nominees. But as explained in the Broadwind Defendants' briefing, the Complaint lacks a single well-pled fact indicating that any of Broadwind's directors knew that an impairment charge should have been booked earlier or that interim testing needed to be conducted. (*See* Dkt. No. 64 at 27-32; *see also* Dkt. No. 74 at 12-18).

In any event, even if Tontine was provided with information about customer forecasts or other aspects of Broadwind's business, it is plain that "one person's informing another of a fact alone does not demonstrate that the latter exercises control over the subject matter of the communication." *Silverman v. Motorola, Inc.*, 772 F. Supp. 2d 923, 933 (N.D. Ill. 2011); *see also id.* at 929 ("The requisite issue is 'control,' rather than 'knowledge.'"). As the

---

[9] Nor do Plaintiffs endeavor to respond to Tontine's argument that it lacked the ability to control the Company's disclosures made in connection with the Offering and, for that very reason, the March 2007 Registration Rights Agreement expressly indemnifies Tontine from losses resulting from any purported false or misleading statements in the Offering materials except with respect to basic written information about Tontine and its Broadwind shares that Tontine was required to prepare and furnish to the Company. (*See* Tontine Br. at 17-18 & n.9; *see also* Ex. 2, at § 2.9(a)).

13

Opposition acknowledges, this is no less true simply because Tontine nominated directors to Broadwind's Board. (*See* Pl. Br. at 17 (conceding that "the appointment of board members does not conclusively establish the power or ability to control Broadwind's public disclosures")).

### III. PLAINTIFFS FAIL TO ALLEGE THAT DEFENDANT GENDELL CONTROLLED BROADWIND

As is abundantly clear from the Complaint, the control person claim against Mr. Gendell fails because Plaintiffs allege no facts whatsoever establishing Mr. Gendell's purported control over the Company. The Opposition only highlights the Complaint's deficiencies.

For the reasons discussed in Part I. A., *supra*, the fact that Mr. Gendell is deemed to beneficially own 47.7% of Broadwind's common stock during the relevant time period (Pl. Br. at 18) is patently insufficient to render him a "controlling shareholder" or a "control person" of Broadwind. Moreover, Plaintiffs' argument that Mr. Gendell "is clearly responsible for Tontine's activities" because "[a]s *the* managing member of the Tontine entities, he must have controlled them" (*id.*) is not even sufficient to render him a control person of *Tontine* for purposes of stating a claim under Section 20(a), much less of Broadwind. *Desai*, 654 F. Supp. at 863 (holding that "where a plaintiff 'self-servingly pleads a bare legal conclusion that the . . . defendants were control persons,' without alleging facts other than defendants' status to support their conclusion, a count for control person liability is improperly pled and must be dismissed") (alteration in original) (citation omitted).

As explained in Tontine's opening brief, there are no well-pled facts indicating that Mr. Gendell even managed the Tontine Funds' investments in Broadwind on a day-to-day basis or that he personally selected Tontine's nominees to the Broadwind Board. The Complaint also lacks a single factual allegation establishing that Mr. Gendell received *any* information regarding the Company's customer contracts or impairment analyses. (Tontine Br. at 19). Nor,

14

of course, does the Opposition point to a single non-conclusory fact suggesting that Mr. Gendell received, reviewed, commented upon, participated in or approved any of the Company's SEC filings, press releases, or any statements made by Broadwind's officers during investor conference calls. (*Id.*). Plaintiffs' conjecture is no substitute for the well-pled facts required to survive dismissal. *Iqbal*, 129 S. Ct. at 1949-50 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("factual allegations" must "raise a right to relief above the speculative level" in order to state a claim).

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in the Tontine Defendants' opening memorandum and the memoranda filed by the Broadwind Defendants in support of their motion to dismiss, the claim for control person liability against the Tontine Defendants should be dismissed with prejudice.

Dated: February 21, 2012

Respectfully submitted,

/s/ Gary Stein

Gary Stein
Michael G. Cutini
David J. Lubitz
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
(212) 756-2000

John C. Martin
LAW OFFICES OF JOHN C. MARTIN, LLC
30 N. LaSalle St., Suite 3400
Chicago, Illinois 60602
(312) 368-9000

*Attorneys for the Tontine Defendants*

**CERTIFICATE OF SERVICE**

I, Gary Stein, one of the attorneys for the Tontine Defendants hereby certify that on February 21, 2012, service of the foregoing Memorandum was accomplished pursuant to ECF as to Filing Users and in compliance with L.R. 5.5 as to any party who is not a Filing User or represented by a Filing User.

**/s/ Gary Stein**

Gary Stein