UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTHUR L. BRASHER, *et al.*, ) | |
| ) | Case No. 1:11-cv-00991 |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Honorable James B. Zagel |
| ) | |
| BROADWIND ENERGY, INC., *et al.*, ) | |
| ) | CLASS ACTION |
| Defendants. ) | |

**PLAINTIFFS' SURREPLY MEMORANDUM OF LAW IN RESPONSE TO REPLY MEMORANDUM OF LAW IN SUPPORT OF THE BROADWIND DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Jerry Pehlke, Jr., Arthur L. Brasher, and Brian M. Grothues, (collectively "Plaintiffs") respectfully submit this Surreply Memorandum of Law in Response to the Reply Memorandum in Support of the Broadwind Defendants' ("Defendants") Motion to Dismiss, for the purpose of addressing two contentions that Defendants raised for the first time in their reply brief: (1) that events and circumstances that transpired in 2009 are purportedly not relevant to the Court's consideration of whether Broadwind Energy, Inc.'s ("Broadwind" or the "Company") 2008 Form 10-K was materially false or misleading; and (2) that Plaintiffs mischaracterized certain statements made by Broadwind's Chief Financial Officer ("CFO"), Defendant Stephanie K. Kushner ("Kushner").

A. **Argument**

First, Defendants suggest for the first time in reply that because Broadwind's 2008 Form 10-K, filed March 17, 2009 (the "2008 Form 10-K"), addresses the Company's financial performance for the year 2008, they cannot be held liable for material omissions in the Form 10-K concerning events and circumstances that transpired in 2009. Defs Reply at 4. This is simply

not the case. The Form 10-K was filed on March 17, 2009, not in 2008. Item 303(a)(3) of Regulation S-K does not restrict the known trends or uncertainties information which is required to be disclosed in the Management's Discussion and Analysis ("MD&A") section of annual reports on Form 10-K to the financial reporting period covered by the Form 10-K. Rather Item 303(a)(3) requires disclosure of trends, events and uncertainties that were known at the time that the Form 10-K is filed. In particular Item 303(a)(3)(ii) provides in part:

> Describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations.

As set forth in the Instructions to Item 303(a)(3):

> The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition. This would include descriptions and amounts of (A) matters that would have an impact on future operations and have not had an impact in the past, and (B) matters that have had an impact on reported operations and are not expected to have an impact upon future operations.

*Id.*

> Required disclosure is based on *currently* known trends, events, and uncertainties that are reasonably expected to have material effects, such as: A reduction in the registrant's product prices; erosion in the registrant's market share; changes in insurance coverage; or likely non-renewal of a material contract.

*Concepts Release on Management's Discussion and Analysis of Financial Condition and Operations,* 52 Fed. R. Reg. 13715, 13717 (April 24, 1987) (emphasis added). The Securities and Exchange Commission's ("SEC") interpretative release regarding Item 303, recently cited with approval by the Second Circuit clarifies that Item 303 imposes a disclosure duty *"where a trend, demand, commitment, event or uncertainty is both **presently known to management and** reasonably likely to have material effects on the registrant's financial condition or results of operations."* See *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 716 (2d Cir. 2011), *cert.*

2

*denied*, 132 S.Ct. 242 (2011) (emphasis added) (citation omitted); *Management's Discussion and Analysis of Financial Condition and Results of Operations*, Securities Act Release No. 33-6835, Exchange Act Release No. 34-26831, Investment Company Act Release No. 16961, 43 SEC Docket 1330 (May 18, 1989); ¶209. Moreover, if the failure to disclose a trend, uncertainty or event known in 2009 would render statements made in the 2008 Form 10-K materially misleading, leading disclosure of same is required. *See* Plaintiffs' Memorandum of Opposition to the Broadwind Defendants' Motion to Dismiss at 19-20.

Second, Defendants contend for the first time in reply that Plaintiffs have grossly mischaracterized the statements made by Defendant Kushner, Broadwind's CFO, during Broadwind's fourth quarter 2010 earnings conference call with analysts and investors. Defs Reply at 4-5. The particular statements include the following:

> [Kushner:] I'd like to provide some more color regarding the large intangible impairment charge taken in the quarter. As we completed our annual test of recoverability of our intangible assets, we determined that a portion of these investments, mainly associated with the Brad Foote acquisition, were impaired. At the time of the acquisition, we had placed a significant share of the purchase price value against key wind customer contracts.
>
> *<u>Coming out of the year</u> when these same customers <u>almost unilaterally</u> reduced or postponed their purchases, we had to recognize that especially in a weak market the contract value in practice was not in line with the balance sheet valuation.* This resulted in a charge of $56 million.

¶¶193-94 (emphasis added).

Defendants claim that the "year" to which Kushner was referring was 2009, rather than 2008. Defs Reply at 4-5. This, however, is far from clear. The subject statement can be interpreted in two ways: (1) coming out of the year 2009, in which these same customers almost unilaterally reduced or postponed their purchases, Broadwind had to recognize that especially in a weak market the contract value in practice was not in line with the balance sheet valuation; or (2) when these same customers almost unilaterally reduced or postponed their purchases coming

3

out of the year 2008, Broadwind had to recognize that especially in a weak market the contract value in practice was not in line with the balance sheet valuation. Plaintiffs' interpretation, the latter one, is consistent with other statements made by Kushner during the conference call:

> ***In the latter part of 2008*, our two large customers were aggressively building turbine inventory and taking every gear set that we could produce. *Shortly after year-end*, they cut back their orders *significantly*....**
>
> ...
>
> **2009 was a very difficult year. We entered the year *facing unilateral curtailments* of volumes from many of our large customers....**

¶¶193-94 (emphasis added). Because Plaintiffs' interpretation is reasonable, they are entitled to an inference at this juncture that their interpretation is correct. *See In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 803 (7th Cir. 2001) ("[A]ny inferences reasonably drawn from the factual allegations of the complaint must be viewed in the light most favorable to the plaintiffs.").

In any event, what is perfectly clear from these statements is that by the beginning of 2009, Broadwind's two largest customers, GE and Clipper, had unilaterally and significantly reduced their orders, and Defendants knew it. Defendants inappropriately attempt to reform the clear understanding of Kushner's statements when viewed as a whole.

B. <u>Conclusion</u>[1]

For the reasons set forth herein and in Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss, the Defendants' Motions to Dismiss should be denied. If the Motion is granted, however, Plaintiffs should be granted leave to amend.

---

[1] Plaintiffs note that on page 18 (eight lines from the bottom margin) of their Opposition Memorandum there is a citation to "*Cf. id.* at 909," followed by a parenthetical. The full citation is *Anderson v. Abbott Labs, Inc.*, 140 F. Supp. 2d 894, 909 (N.D. Ill. 2001), *aff'd on other grounds*, 269 F.3d 806 (7th Cir. 2001).

Dated: March 13, 2012

Respectfully submitted,

/s/
James T. Crotty (0549029)
JAMES T. CROTTY & ASSOCIATES
3S126 S. Park Blvd.
Glen Ellyn, IL 60137
Telephone: (312) 623-1599
Facsimile: (312) 553-1586
jamestcrotty@aol.com

*Liaison Counsel for Plaintiffs*

William B. Federman
Jennifer S. Montagna
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
jsm@federmanlaw.com

*Lead Counsel for Plaintiffs*

Samuel H. Rudman
Joseph Russello
Andrea Y. Lee
ROBBINS GELLER RUDMAN & DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173

*Additional Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, James T. Crotty, one of Plaintiffs' attorneys, hereby certify that on March 13, 2012, service of the foregoing Surreply Memorandum of Law in Response to Reply Memorandum of Law in Support of the Broadwind Defendants' Motion to Dismiss was accomplished pursuant to ECF as to Filing Users and in compliance with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/