# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARTHUR L. BRASHER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 11-CV-0991 |
| v. | ) |
| | ) Honorable James B. Zagel |
| BROADWIND ENERGY, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## BROADWIND DEFENDANTS' RESPONSE TO
## PLAINTIFFS' SURREPLY MEMORANDUM OF LAW

Defendants Broadwind Energy, Inc. ("Broadwind" or the "Company"), J. Cameron Drecoll, Stephanie K. Kushner, Matthew J. Gadow, Stephen E. Graham, Kevin E. Johnson, James M. Lindstrom, David P. Reiland, Charles H. Beynon, William T. Fejes, and Terence P. Fox (collectively, the "Broadwind Defendants") respectfully submit this Response to Plaintiffs' Surreply Memorandum of Law in Response to Reply Memorandum of Law in Support of the Broadwind Defendants' Motion to Dismiss (Dkt. # 78, hereinafter "Surreply").

## ARGUMENT

I.  **PLAINTIFFS DO NOT PLEAD PARTICULARIZED FACTS DEMONSTRATING THAT THE 2008 10-K CONTAINED FALSE OR MISLEADING STATEMENTS OR ACTIONABLE OMISSIONS.**

The Complaint alleges, *inter alia*, that a number of statements in Broadwind's 2008 Form 10-K were false or misleading – specifically, Plaintiffs claim that the Form 10-K failed to disclose "known trends" that were expected to have a material adverse effect on Broadwind's business. As the Broadwind Defendants showed, however, Plaintiffs have not adequately alleged that any statements contained in the 2008 Form 10-K were false and misleading, much less have they satisfied the stringent requirements of the PSLRA of establishing facts giving rise to a "strong inference" that the statements were made with *scienter*. That is because, among other reasons, the 10-K did, in fact, disclose the existence of adverse trends; Plaintiffs did not allege any specific facts showing that the 10-K disclosures were insufficient or inaccurate; and Item 303 of Regulation S-K, on which Plaintiffs rely, does not establish a private right of action. (*See* Dkt. # 74, hereinafter "Reply," at 3-7.)

In their Surreply, Plaintiffs assert that the Broadwind Defendants may be liable for alleged material omissions based on events that occurred *after* the end of 2008 – the period the Form 10-K described – but *before* the 2008 Form 10-K was actually filed in March 2009. As an initial matter, this ignores the actual language of the Form 10-K itself. In fact, the discussion of

events and trends that Plaintiffs claim is materially incomplete is set forth in a section prominently labeled "***Summary of 2008***" (2008 10-K, Dkt. # 64-2 at 25 (emphasis in original)) and appears after an introductory sentence stating "[b]elow is a summary of some of the key events and trends *from 2008*" (*id.* (emphasis added)). Plaintiffs do not explain how events that occurred in 2009 could render these statements, which were explicitly directed to events in 2008, materially misleading or incomplete.

In any event, however, nothing in Plaintiffs' Surreply rehabilitates the absence of any particularized facts in the Complaint to suggest that *additional* "known trends or uncertainties" (*i.e.*, beyond those already disclosed in the Form 10-K) made those disclosures materially incomplete. In this regard, the registrant must "reasonably expect" that the trend or uncertainty "*will* have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Item 303(a)(3)(ii). As such, the particular matter must be sufficiently sizeable and long-lasting to constitute a "known *trend*" requiring disclosure. *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1191 (11th Cir. 2002) (a "trend" under Item 303 requires "an assessment of whether an observed pattern accurately reflects persistent conditions of the particular registrant's business environment. It may be that a particular pattern is, for example, of such short duration that it will not support any conclusions about the registrant's business environment"); *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 213, 221 (5th Cir. 2004) (a 60% decline in natural gas prices occurring slightly more than five months preceding an IPO did not establish a trend under Item 303); *see also* Dkt. # 64, hereinafter "Mem.," at 28; Reply at 15-16.

Plaintiffs' allegations do not meet this standard. The core allegation in Plaintiffs' Complaint is that order forecasts from GE and Clipper declined by 75% between November 2008 and June 2009. Not only is this allegation based solely on the estimates of CI 4 (who is never alleged to have seen the actual order forecasts) (*see* "Mem." at 12, 30; Reply at 5), it does

2

not provide any particularized information relating to the size or timing of any reductions in order forecasts that occurred prior to the issuance of the 2008 10-K, much less that these purported trends were believed to be sizable and long-lasting as of March 2009 (*see* Mem. at 28; Reply at 15-16). Similarly, Plaintiffs do not allege particularized factual information regarding the timing of other alleged events relating to Broadwind's contracts with GE and Clipper. (*See id*. at 4.) Plaintiffs do not specify *when* GE allegedly attempted to renegotiate its contract with Broadwind, other than to indicate that it occurred in early 2009, and, because CI 3 concedes that he "did not know the specific numbers in the contract" (Compl. ¶ 70), the Complaint does not allege the impact of any reduction in orders or attempted renegotiation. Other events, such as Clipper's alleged refusal to accept delivery of products, are not alleged to have happened until June 2009, well after the issuance of the 2008 10-K. (*Id.* ¶ 80.)

## II.  PLAINTIFFS MISCHARACTERIZE THE STATEMENTS OF MS. KUSHNER.

Plaintiffs continue to mischaracterize the statements of Ms. Kushner made during the Company's analyst conference call that took place in March 2010. The explicit purpose of the call was to discuss the Company's financial results from the fourth quarter and full year of 2009. And as Plaintiffs' own quotation of Ms. Kushner's remarks makes clear, Ms. Kushner was describing the impairment charge the Company had booked for the fourth quarter of 2009, after completing its testing of intangible assets in March of 2010. Ms. Kushner explained that the Company recognized the need to take the charge when it completed its testing of intangible assets and after "[c]oming out of the year" when certain customers reduced or postponed their contracts. (*See* Surreply at 3; Compl. ¶¶ 193-94.) The only reasonable interpretation of these remarks – made in 2010 regarding testing completed in 2010 – is that the prior "year" the Company was "[c]oming out of" is 2009.

Though Plaintiffs admit that this is a reasonable interpretation of Ms. Kushner's

3

statement, they persist in advancing the theory that somehow Ms. Kushner was actually referring to 2008. (Surreply at 3.) Not only does Plaintiffs' interpretation require ignoring the plain meaning of Ms. Kushner's statement and the context in which it was made, it is also inconsistent with Ms. Kushner's later remarks, which make clear that the significant reductions in order forecasts took place during 2009. (*See id.* at 4; Compl. ¶ 194; 3/12/10 earnings call, Dkt. #64-19 at 5 ("In the latter part of 2008, our two large customers were aggressively building turbine inventory . . . . Shortly after year-end, they cut back their orders significantly").)

As Plaintiffs acknowledge, they are only entitled to reasonable inferences drawn from their factual allegations (Surreply at 4), and their tortured interpretation of Ms. Kushner's words is manifestly not reasonable. And there is one additional point: because Plaintiffs must establish the element of *scienter*, the lengths to which they go to misread Ms. Kushner's remarks underscores that their proposed inference of fraud is hardly "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

## CONCLUSION

For the reasons set forth herein, and in their Motion to Dismiss, Memorandum, and Reply, the Broadwind Defendants respectfully request that the Court dismiss the Amended Class Action Complaint with prejudice.

March 20, 2012
/s/ Meredith Jenkins Laval
James W. Ducayet
Kristen R. Seeger
Meredith Jenkins Laval
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000

*Counsel for the Broadwind Defendants*

4

**CERTIFICATE OF SERVICE**

I, Meredith Jenkins Laval, one of the Broadwind Defendants' attorneys, hereby certify that on March 20, 2012, service of the foregoing Broadwind Defendants' Response to Plaintiffs' Surreply Memorandum of Law was accomplished pursuant to ECF as to Filing Users and in compliance with L.R. 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/ Meredith Jenkins Laval

Meredith Jenkins Laval