UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARTHUR L. BRASHER, *et al.*,   )
            )
    Plaintiffs,    )  Case No. 1:11-cv-00991
            )
vs.          )  Honorable James B. Zagel
            )
BROADWIND ENERGY, INC., *et al.*,  )
            )
    Defendants.   )
_____)

**PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF FACTS COMMON TO THE CLASS ................................... 3

III.   ARGUMENT ......................................................................................................... 5

     A.    Standard for Class Certification.................................................................. 5

     B.    The Proposed Class Satisfies the Prerequisites of Rule 23(a). ............................. 5

          1.    The Class Is So Numerous that Joinder of All Members Is Impracticable.................................................................................. 5

          2.    Questions of Fact and Law Are Common to Members of the Class. ......... 7

          3.    Plaintiffs' Claims Are Typical of Those of the Class. ............................... 9

          4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class Members. ............................................................................ 10

     C.    The Proposed Class Satisfies Rule 23(b)(3). ....................................................... 12

          1.    Common Questions of Law or Fact Predominate.................................... 12

          2.    A Class Action Is Superior to Other Available Means of Adjudication. ......................................................................... 18

IV.   CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Abrams v. Van Kampen Funds*,
    No. 01 C 7538, 2002 WL 1989401, at *4 (Aug. 27, 2002) ............................................. 13

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591, 623 (1997)...................................................................................... 5, 13, 20

*Beale v. EdgeMark Fin. Corp.*,
    164 F.R.D. 649, 658 (N.D. Ill. 1995)............................................................................. 14

*Binder v. Gillespie*,
    184 F.3d 1059, 1065 (9th Cir. 1999) ............................................................................. 16

*Cammer v. Bloom*,
    711 F. Supp. 1264, 1286-87 (D.N.J. 1989)................................................... 15, 16, 18, 19

*De La Fuente*,
    713 F.2d at 232 .............................................................................................................. 10

*Fry v. UAL Corp.,*
    136 F.R.D. 626, 630 (N.D. Ill. 1991)............................................................................... 6

*Gaspar v. Linvatec Corp.,*
    167 F.R.D. 51, 56 (N.D. Ill. 1996)................................................................................... 6

*General Telephone Co. of Southwest v. Falcon,*
    457 U.S. 147, 157 (1982)................................................................................................. 7

*Greenberg v. Boettcher & Co.,*
    755 F. Supp. 776, 782 (N.D. Ill. 1991) ......................................................................... 15

*Hayes v. Gross*,
    982 F.2d 104, 107 (3d Cir. 1992)................................................................................... 16

*Hochschuler v. G.D. Searle & Co.*,
    82 F.R.D. 339, 344 (N.D. Ill. 1978)............................................................................... 10

*In re Accredo Health, Inc. Sec. Litig.*,
    No. 03-2216 DP, 2006 WL 1716910 at *8 (W.D. Tenn. April 19, 2006) ........................ 17

*In re Bank One Sec. Litig./First Chi. S'holder Claims*,
    No. 00 CV 0767, 2002 WL 989454, at *7 (N.D. Ill. May 14, 2002).................... 13, 14, 21

*In re Countrywide Financial Corp. Sec. Litig.*,
    273 F.R.D. 586, 613 n. 82 (C.D. Cal. 2009).................................................................... 18

*In re DVI, Inc. Sec. Litig.*,
    639 F.3d 623, 634 (3d Cir. 2011)............................................................................. 18, 19

*In re Initial Public Offering Sec. Litig.*,
    243 F.R.D. 79, 91 and n. 97 (S.D.N.Y. 2007) .................................................... 17

*In re Neopharm, Inc. Sec. Litig.*,
    225 F.R.D. 563, 565 (N.D. Ill. 2004)............................................................. 6, 7

*In re Northfield Lab. Inc. Sec. Litig.*,
    267 F.R.D. 536, 544-45 (N.D. Ill. 2010) .................................................... 15, 19

*In re Retek Inc. Sec. Litig.,*
    236 F.R.D. 431, 437 n.3 (D.Minn. 2006) ........................................................ 17

*In re Sys. Software Assocs., Sec. Litig.*,
    No. 97 C 177, 2000 WL 1810085 (N.D. Ill. Dec. 8, 2000) ................................ 6

*In re Xcelera.com Sec. Litig.*,
    430 F.3d 503, 514-18 (1st Cir. 2005)................................................. 17, 18, 19

*Keele v. Wexler*,
    149 F.3d 589, 594 (7th Cir. 1998) ............................................................. 7, 9

*King v. Kansas City S. Indus., Inc.*,
    519 F.2d 20, 26 (7th Cir. 1975) ...................................................................... 2, 5

*Krogman v. Sterritt*,
    202 F.R.D. 467, 478 (N.D. Tex. 2001) .............................................................. 19

*Levine v. SkyMall, Inc.,*
    No. CIV-99-166-PHX-ROS, 2002 WL 31056919 (D. Ariz. May 24, 2002) .................. 18

*Loeb Indus., Inc. v. Sumitomo Corp.,*
    306 F.3d 469, 480 (7th Cir. 2002) .................................................................... 5

*Long v. Thornton Township High Sch. Dist.,*
    82 F.R.D. 186, 189 (N.D. Ill. 1979)................................................................. 6

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    256 F.R.D. 586, 595 (N.D. Ill. 2009)................................................ 5, 11, 12

*Oshana v. Coca-Cola Co.*
    472 F.3d 506, 513 (7th Cir. 2006) .................................................................. 5

*Peil v. Speiser*,
    806 F.2d 1154, 1160-61 (3d Cir. 1986) ........................................................ 14

*Rosario v. Livaditis*,
   963 F.2d 1013, 1018 (7th Cir. 1992) ....................................................................... 7, 9, 11

*Roth v. Aon Corp.*,
   238 F.R.D. 603, 605 (N.D. Ill. 2006).......................................................... 2, 5, 8, 9, 10, 20

*Schleicher v. Wendt*,
   618 F.3d 679, 681 (7th Cir. 2010) .............................................................................. 14, 15

*Scholes v. Stone, McGuire & Benjamin*,
   143 F.R.D. 181, 185 (N.D. Ill 1992)........................................................................... 10, 13

*Tatz v. Nanophase Techs. Corp.*,
   No. 01 C 8440, 2003 WL 21372471, at *5 (N.D. Ill. June 13, 2003)............. 6, 8, 9, 15, 16

*Zeidman v. J. Ray McDermott & Co.,*
   651 F.2d 1030, 1039 (5th Cir. 1981) ................................................................................. 6

**Rules**

Fed. R. Civ. P. 23 …………………………………………………………………*passim*

Lead Plaintiff Jerry Pehlke, Jr. ("Pehlke" or "Lead Plaintiff") and Plaintiff Brian M. Grothues ("Grothues") (collectively "Plaintiffs") respectfully submit this brief in support of their motion for class certification.[1] Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek to certify this securities case as a class action on behalf of all purchasers of Broadwind Energy, Inc. ("Broadwind" or the "Company") common stock during the period March 16, 2009 through March 19, 2010, inclusive (the "Class Period").[2] Plaintiffs also request that the Court appoint them as class representatives and their chosen counsel, Federman & Sherwood and James T. Crotty & Associates, as class and liaison counsel, respectively.

## I. INTRODUCTION

This is a securities fraud class action brought against Broadwind and its CEO, Drecoll (collectively, "Defendants").[3] The Complaint alleges that during the Class Period, Defendants violated § 10(b) and Drecoll violated § 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, by recklessly and/or intentionally misleading the public concerning the Company's goodwill and intangible assets. ¶¶6, 280, 285. Indeed, despite a raft of significant problems occurring from late 2008 through 2009, the Company delayed its impairment testing and write-down of goodwill and intangible assets so that it could keep the stock price inflated until it completed a secondary offering of common stock in January 2010.

---

[1] By Order dated July 7, 2011, the Court appointed Jerry Pehlke, Jr. as Lead Plaintiff and approved his selection of Lead and Liaison Counsel. *See* Dkt. No. 39.

[2] Excluded from the class are Defendants Broadwind and J. Cameron Drecoll ("Drecoll"), the Company's Chief Executive Officer ("CEO"), any entity in which Defendants have or had a controlling interest, the officers and directors of Broadwind and members of their immediate families, and the legal representatives, heirs, successors, and assigns of any such excluded party.

[3] In its April 19, 2012 Memorandum Opinion and Order, the Court dismissed certain claims alleged in Plaintiffs' Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint," cited as "¶__"), as well as certain of the defendants that Plaintiffs had named. *See* Dkt. No. 84. Broadwind and Drecoll are the remaining defendants, and the claims described herein are the remaining claims.

After Defendants revealed on March 12, 2010 that Broadwind had recorded an $82.2 million charge to goodwill and other intangible assets during the fourth quarter of 2009, the Company's stock price plummeted, dropping $1.21 per share, or 21%, to close at $4.47 per share. ¶196. The stock price fell another $0.36 per share, or 8%, to close at $4.11 per share the next day. *Id*. Because Plaintiffs and the Class suffered economic loss in precisely the same way as a result of Defendants' fraudulent conduct and are thus similarly situated, Plaintiffs seek to certify this case as a class action to seek compensation for such losses in the most efficient and effective manner possible.

"It is established law in the Northern District of Illinois and the Seventh Circuit that class certifications are the preferred method of dealing with securities fraud cases." *Roth v. Aon Corp.*, 238 F.R.D. 603, 605 (N.D. Ill. 2006); *accord King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 26 (7th Cir. 1975) (observing that Rule 23 is liberally construed in favor of class certification and that "[t]his policy operates just as surely in cases where securities fraud is charged"). This case meets all of the requirements of Rule 23. The proposed class members are so numerous and geographically dispersed that joinder of each individual claimant would be impracticable. The proposed class representatives' claims present common questions of law and fact and are typical of other class members' claims, and Pehlke and Grothues and their counsel will adequately represent the class. Further, common questions predominate over individual ones and prosecuting and resolving these claims through a class action is superior to other methods.

Accordingly, this case should be certified as a class action, Pehlke and Grothues should be appointed as class representatives, and their counsel should be appointed as class and liaison counsel.

## II.  SUMMARY OF FACTS COMMON TO THE CLASS

Broadwind describes itself as a provider of "technologically advanced high-value products and services to the U.S. wind energy industry." ¶42. The Company's product and service portfolio provides customers, "including wind turbine manufacturers, wind farm developers and wind farm operators, with access to a broad array of wind component and service offerings." *Id.* Broadwind acquired Brad Foote Gear Works, Inc. ("Brad Foote") on October 19, 2007. ¶47. In connection with its acquisition of Brad Foote, Broadwind recognized intangible assets (customer relationships) in the amount of $75.5 million and goodwill in the amount of $21 million. ¶4.

Beginning by at least the fourth quarter 2008, the demand for products of Broadwind's two largest customers, General Electric Co. ("GE") and Clipper Windpower ("Clipper"), began to substantially decline. ¶3. By as early as mid-November 2008, GE and Clipper significantly cut their order forecasts and continued to make further cuts to their order forecasts with each subsequent month. ¶3. In fact, one confidential informant, who was a Senior Procurement Specialist for Brad Foote, estimated that forecasts from GE and Clipper declined by 75% from November 2008 to July 2009. ¶3.

Because a significant amount of the Company's goodwill and intangible assets derived from its two largest customers, GE and Clipper, as demand from these customers declined, so too did the Company's cash flows and the value of the Company's assets. ¶¶4, 5, 193. Because of GE and Clipper's ever-decreasing forecasts of demand for Broadwind's products and the increasing uncertainty of the continued viability of those contracts, Broadwind's future economic benefits from assets (*i.e.,* goodwill), Brad Foote's value derived from customer relationships (included in Broadwind's intangible assets), cash flows estimated to be contributed from these customer relationships, and goodwill were undeniably decreasing. ¶5. Indeed, the Company's

contracts with GE and Clipper became so attenuated that GE was forced to renegotiate its purchase contract with Broadwind while Clipper simply stopped paying Broadwind entirely. ¶5. Accordingly, Defendants were required to write down the Company's valuation of its goodwill and intangible assets, as required by generally accepted accounting principles ("GAAP"). ¶5.

Defendants, however, failed to disclose the adverse news of GE and Clipper's lowered order forecasts or to account for the impairment of Broadwind's goodwill and intangible assets. ¶6. In fact, they ignored specific "triggering" events and circumstances prior to and throughout the Class Period which required interim impairment analyses of the Company's intangible assets and goodwill, including the significant decline in demand of its customers, and historical and present operating losses of Brad Foote's operating segment. ¶¶225, 232, 229-30. Defendants also delayed performing the Company's annual impairment review of goodwill, which was scheduled to occur in October 2009, and delayed reporting the impairment charge. ¶¶6, 249.

The delay in impairment testing and reporting allowed Broadwind to complete its secondary public offering in January 10, 2010 (the "Offering"), in which it sold 15 million shares of common stock to the public at $5.75 per share, raising more than $86 million in proceeds. ¶¶6, 175. In addition, the delay in testing and reporting allowing Drecoll to sell 1,125,000 of his personally held shares for net proceeds of over $6 million. *Id.* By contrast, Plaintiffs and the Company's other unsuspecting public shareholders were not so fortunate. Indeed, not until March 12, 2010 did the Company finally disclose the enormous $82.2 million impairment charge to goodwill and intangible assets that it took for the fourth quarter of 2009. ¶196. The disclosure of this news had an immediate adverse impact on the Company's stock price, causing substantial losses to such shareholders. *Id.*

## III.   ARGUMENT

### A.   Standard for Class Certification

Rule 23(a) permits class treatment where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "In addition to satisfying the requirements under Rule 23(a), a party seeking class certification must also establish that the proposed class satisfies one of the requirements set forth in Rule 23(b)." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 595 (N.D. Ill. 2009) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S. Ct. 2231, 138 L.Ed.2d 689 (1997); *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006)).

"[O]n a motion for class certification, the court's inquiry is limited to whether the requirements of Rule 23 have been satisfied, and 'a court may not refuse to certify a class on the ground that it thinks the class will eventually lose on the merits.'" *Makor*, 256 F.R.D. at 595 (citing *Loeb Indus., Inc. v. Sumitomo Corp.,* 306 F.3d 469, 480 (7th Cir. 2002) (internal citations omitted)). There is a "strong policy favoring class certification" in securities actions and Rule 23 is therefore "liberally construe[d]." *Roth*, 238 F.R.D. at 605-06; *see also King*, 519 F.2d at 26. This case easily satisfies the requirements of Rule 23.

### B.   The Proposed Class Satisfies the Prerequisites of Rule 23(a).

#### 1.   The Class Is So Numerous that Joinder of All Members Is Impracticable.

In order to satisfy the first requirement of Rule 23(a), Plaintiffs need only show that it would be impracticable to join all of the potential class members in this action. "Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met." *In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill.

5

2004) (citations omitted). A plaintiff is not required to identify the number of class members with precision and need only show "some evidence or reasonable estimate of the number." *Tatz v. Nanophase Techs. Corp.*, No. 01 C 8440, 2003 WL 21372471, at *5 (N.D. Ill. June 13, 2003) (citing *Long v. Thornton Township High Sch. Dist.,* 82 F.R.D. 186, 189 (N.D. Ill. 1979)). "Furthermore, in securities fraud suits involving nationally traded securities, numerosity may be assumed." *In re Sys. Software Assocs., Sec. Litig.*, No. 97 C 177, 2000 WL 1810085, at *1 (N.D. Ill. Dec. 8, 2000) (citing *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1039 (5th Cir. 1981); *Fry v. UAL Corp.,* 136 F.R.D. 626, 630 (N.D. Ill. 1991) (applying *Zeidman* presumption in nationally traded security)). "The court is entitled to make 'common-sense assumptions that support a finding of numerosity.'" *Neopharm*, 225 F.R.D. at 565 (citing *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D. Ill. 1996)).

In this case, the numerosity requirement is readily satisfied. During the Class Period, Broadwind had between 96.5 and 106.7 million shares of common stock outstanding and its shares traded on the NASDAQ Global Select Market. *See* Declaration of Candace L. Preston in Support of Plaintiffs' Motion for Class Certification ("Preston Decl.") at ¶46, attached as Exhibit 1. In addition, over 100 institutions held shares of Broadwind stock, including banks, investment advisors, mutual funds, pension funds, research firms and international sovereign funds. *Id*. at ¶17, n. 6, and Ex.1-C. Many of these institutions held shares on behalf of individual investors. *Id*. Thus, while the exact number of class members cannot be determined until after the completion of discovery, it is reasonable to conclude that there are hundreds, if not thousands, of members in the Class. *See Neopharm*, 225 F.R.D. at 565 (inferring that the class numbered hundreds if not thousands because the stock trades on NASDAQ and more than 16 million shares are outstanding).

### 2. Questions of Fact and Law Are Common to Members of the Class.

Commonality exists if questions of fact and law are common to members of the proposed class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement[,]" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and is readily found where "the defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). Their claims must depend upon a common contention that "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

"The commonality requirement is not difficult to meet, and "has been characterized as a low hurdle, easily surmounted." *Roth*, 238 F.R.D. at 606 (internal citation omitted). This district court routinely concludes that the commonality requirement is satisfied in securities fraud class actions just like this one. *See id.*; *Tatz*, 2003 WL 21372471, at *6.

The nature and existence of material omissions and misrepresentations detailed in the Complaint – the most crucial issues in a securities fraud case – present questions of fact and law clearly common to all members of the class. Defendants' uniform false statements appeared in conference calls, press releases, Forms 10-K and 10-Q, and registration statements and prospectuses filed with the SEC and disseminated to the investing public. ¶¶111, 128, 140, 144-45, 159. As a result, class certification is appropriate because the claims against Defendants arise out of the same set of operative facts, and determination of their truth or falsity will resolve the central issues of the case. *Dukes*, 131 S. Ct. at 2551. Common questions of fact and law are clear

from Plaintiffs' allegations, including: (i) whether Defendants violated federal securities laws; (ii) whether statements made by Defendants to the investing public misrepresented material facts about the Company; (iii) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (iv) whether the price of Broadwind common stock was artificially inflated during the Class Period; and (v) to what extent the members of the class have sustained damages and the proper measure of damages. ¶40.

Securities fraud complaints alleging such common questions have consistently been regarded as prime candidates for class certification. *See Roth*, 238 F.R.D. at 609; *Tatz*, 2003 WL 21372471, at *6. Plaintiffs allege that Defendants' fraudulent misrepresentations and omissions concerning Broadwind's failure to conduct impairment testing or record goodwill and intangible asset impairments inflated the Company's stock price, thereby affecting each class member in a uniform manner. ¶¶205, 207, 264, 271-72, 277. Plaintiffs, like other class members, purchased Broadwind shares based on the integrity of the market, when the artificial inflation resulting from Defendants' misconduct was incorporated in Broadwind's stock price. ¶¶276-77; *see* Preston Decl. at ¶¶7, 51 (opining that the market for Broadwind stock was efficient) and discussion at section III.C.1, *infra*. In addition, Plaintiffs, like other class members, suffered economic injury when the Company disclosed an $82.2 million charge to goodwill and intangible assets and the fraud was exposed – causing significant declines in the price of the Company's stock. As a result, all class members' claims arise out of a common nucleus of facts and all class members were damaged by Defendants' "standardized conduct" during the Class Period. *Keele*, 149 F.3d at 594. These common questions clearly weigh in favor of class certification.

### 3. Plaintiffs' Claims Are Typical of Those of the Class.

The typicality requirement of Rule 23(a)(3) is "closely related" to the commonality requirement. *Roth*, 238 F.R.D. at 606 (citing *Rosario*, 963 F.2d at 1018). A proposed class representative's claim is typical under Rule 23(a)(3) if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). "Courts are directed to 'liberally construe' the typicality requirement," and therefore, "the class members' claims" "need not be identical to meet this requirement." *Roth*, 238 F.R.D. at 606 (quoting *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 344 (N.D. Ill. 1978) and citing *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill 1992)). "The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *De La Fuente*, 713 F.2d at 232.

Plaintiffs' claims are typical of the proposed class's claims within the meaning of Rule 23(a)(3). As set forth in the "commonality" section above, Plaintiffs seek to recover damages caused by the same materially false and misleading statements contained in, or material facts omitted from, documents and statements disseminated by defendants to the investing public. Each proposed class representative is typical of other class members because each purchased shares of Broadwind stock at artificially inflated prices as a result of the same fraudulent conduct that damaged other class members. Each member of the class was subject to the identical course of fraudulent conduct throughout the Class Period and sustained damages as a result. Because the proposed class representatives' claims arise from the identical misrepresentations and omissions, their claims are typical of those of the class.

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class Members.

Rule 23(a)(4) requires the class representatives to "fairly and adequately protect the interests of the class." "To establish that they will fairly and adequately protect the interests of the class, class representatives must show that: (1) their claims are not antagonistic to or in conflict with those of the proposed class; (2) they have sufficient interest in the outcome of the case; and (3) experienced, competent counsel represents them." *Makor*, 256 F.R.D. at 599 (N.D. Ill. 2009) (citing *Rosario*, 963 F.2d at 1018). "[T]he burden in demonstrating that the class representative meets this standard is not difficult. . . . An understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery are sufficient to meet this standard." *Makor*, 256 F.R.D. at 601 (internal citations omitted). The proposed class representatives and proposed class and liaison counsel more than satisfy these requirements.

The proposed class representatives have no conflicts of interest with other class members, and, as noted above, are similarly situated to other class members. Indeed, Plaintiffs, like other class members, were damaged as a result of Defendants' misconduct during the Class Period and must prove the same wrongdoing in order to establish Defendants' liability. Lead Plaintiff, with the assistance of counsel, has been vigorously prosecuting the claims brought in this action on behalf of himself and the class by way of conducting an extensive investigation into Defendants' fraud, partially defeating Defendants' motion to dismiss, and aggressively pursuing discovery. Plaintiffs Pehlke and Grothues have attested that they are willing to fulfill the duties of class representatives. *See* Investor Certifications of Pehlke and Grothues, attached as Exhibits 2-A and 2-B to the Declaration of William B. Federman, Ex. 2. Furthermore, no class members have been or will be disadvantaged by the proposed class representatives' continued leadership of the prosecution of this action.

10

Finally, Plaintiffs have retained attorneys with considerable experience in securities fraud class actions and complex litigation. Plaintiffs are represented by Federman & Sherwood, whose attorneys have served as counsel in numerous securities class actions. The firm resume for Lead Counsel evidences its qualifications to vigorously prosecute the interests of the proposed class. *See* Federman Decl., Ex. 2-C. Liaison counsel, James T. Crotty & Associates, is also qualified and experienced in the prosecution of complex litigation. *See* Federman Decl., Ex. 2-D. The competence and commitment of counsel is evidenced by the results they have obtained to date, and there can be no legitimate dispute that Lead Counsel is qualified, experienced, and capable of prosecuting this litigation on behalf of the class. Accordingly, Plaintiffs are adequate class representatives under Rule 23(a)(4).

Although it is not clear whether Rule 23(g) applies to securities actions subject to the PLSRA, many courts have held that "the requirements of both section 78u-4 and Rule 23 should be satisfied." *Makor*, 256 F.R.D. at 601 (internal citations omitted). Proposed class counsel was appointed Lead Counsel pursuant to this Court's order dated July 7, 2011. *See* Dkt. No. 39. In addition, Lead Counsel easily meets the requirements of Rule 23(g), which provides that when appointing class counsel, a court must consider:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)     counsel's knowledge of the applicable law; and
>
> (iv)     the resources that counsel will commit to representing the class.

Federman & Sherwood have performed significant work in investigating and successfully prosecuting the claims in this action. Counsel is also aggressively pursuing discovery from Defendants, as well as a slew of relevant third parties, including the company's auditor, Grant

Thornton, LLP; its investment banker Macquarie Capital (USA), Inc.; its two valuation appraisal firms, Valuation Research Corp. and Crowe Horwath, LLP; and its two principal customers General Electric Co. and Clipper Windpower, LLC. As described above, Lead Counsel has extensive experience conducting securities class actions, knows the applicable law, and is committed to providing the necessary resources to represent the class.

### C. The Proposed Class Satisfies Rule 23(b)(3).

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy at least one of the three conditions imposed by Rule 23(b). Here, Plaintiffs move for class certification pursuant to Rule 23(b)(3), which permits certification where: (1) the "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This action meets both standards.

### 1. Common Questions of Law or Fact Predominate.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). "While common questions of law or fact must predominate, they need not be exclusive." *Abrams v. Van Kampen Funds*, No. 01 C 7538, 2002 WL 1989401, at *4 (Aug. 27, 2002) (citing *Scholes v. Moore*, 150 F.R.D. 133, 138 (N.D. Ill. 1993)). "To determine whether common questions predominate, courts look to whether there is a 'common nucleus of operative facts.'" *Id.* (internal citations omitted). In making the determination, the court should direct its inquiry primarily toward the issue of liability, rather than damages. *In re Bank One Sec. Litig./First Chi. S'holder Claims*, No. 00 CV 0767, 2002 WL 989454, at *7 (N.D. Ill. May 14, 2002) (internal citations omitted).

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Anchem*, 521 U.S. at 625. In this case, Defendants' liability arises from their dissemination of materially false and misleading statements during the Class Period. The issues that predominate are whether Defendants' statements were materially false and misleading, whether Defendants knew or recklessly disregarded this fact, whether the false statements affected the stock's price, and whether the magnitude of the effects was material. *See Schleicher v. Wendt*, 618 F.3d 679, 681 (7th Cir. 2010) (listing these as four common questions in securities actions); *In re Bank One*, 2002 WL 989454, at *7 ("The issues of law and fact that flow from Defendants' alleged misstatements and omissions predominate over any individual issue."). Individual class members would have to prove the same elements. Moreover, courts have uniformly held that individual issues regarding damages may not defeat class certification. *See Beale v. EdgeMark Fin. Corp.*, 164 F.R.D. 649, 658 (N.D. Ill. 1995) ("The only individual issues involve questions of damages . . . [which have] not been held to bar a class action."). Finally, because Plaintiffs rely on the fraud-on-the-market presumption, individual proof of reliance is not an issue.

In *Basic*, the Supreme Court held that plaintiffs may establish a rebuttable presumption of reliance by showing that the subject stock traded in an open and developed (*i.e.*, efficient) market.

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatement.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

485 U.S. at 241 (quoting *Peil v. Speiser*, 806 F.2d 1154, 1160-61 (3d Cir. 1986). "When a company's stock trades in a large and efficient market, the contestable elements of the Rule 10b–

5 claim reduce to falsehood, scienter, materiality, and loss. Because each investor's loss usually can be established mechanically, common questions predominate and class certification is routine, if a suitable representative steps forward." *Schleicher,* 618 F.3d at 682. "If the plaintiffs can take advantage of the fraud-on-the-market theory to establish a presumption of reliance, then common issues will predominate; but, if plaintiffs must establish reliance individually, then individual issues will predominate, and proceeding as a class will be inappropriate." *In re Northfield Lab. Inc. Sec. Litig.*, 267 F.R.D. 536, 544-45 (N.D. Ill. 2010). The evidence demonstrates that during the Class Period, Broadwind common stock traded in an efficient market and, therefore, the class members are entitled to the fraud-on-the-market presumption of reliance. Compl. ¶¶276-77.

"The Seventh Circuit has not weighed in on the factors a court should consider in determining whether a stock traded in an efficient market," but several courts, including this Court, have adopted the "*Cammer*" factors in order to evaluate market efficiency. *See Northfield*, 267 F.R.D. at 545-46 (citing *Tatz*, 2003 WL 21372471, at *7; *Greenberg v. Boettcher & Co.,* 755 F. Supp. 776, 782 (N.D. Ill. 1991)). The five *Cammer* factors are:

> 1) whether the stock trades at a high weekly volume; 2) whether securities analysts follow and report on the stock; 3) whether the stock has market makers and arbitrageurs; 4) whether the company is eligible to file SEC registration form S–3, as opposed to form S–1 or S–2; and 5) whether there are empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price.

*Tatz*, 2003 WL 21372471, at *7 (citing *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999); *Hayes v. Gross*, 982 F.2d 104, 107 (3d Cir. 1992); *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989)). These factors are not exclusive, and the plaintiff "is not required to show the existence of each of these factors" to establish market efficiency. *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 683 (N.D. Ala. 2005) (citations omitted); *see also Simpson v. Specialty Retail Concepts, Inc.*, 823 F. Supp. 353, 355 (M.D.N.C. 1993).

Here, the application of the *Cammer* factors strongly supports the conclusion that Broadwind traded in an efficient market. First, Broadwind's stock traded at a high weekly volume during the Class Period – averaging 1,735,378 shares. Preston Decl. at ¶16.[4] The turnover of the average Broadwind shares outstanding during the Class Period was 1.8%, well within the benchmark prescribed by *Cammer* of 1-2%, demonstrating an active market in Broadwind shares was present during the Class Period. *Id.*; *Cammer*, 711 F. Supp. at 1286. Moreover, the turnover of the average Broadwind shares outstanding in the public's hands (*i.e.*, not held by affiliates of Broadwind) was 4.5%, far exceeding the *Cammer* benchmark. *Id.* Over 100 institutional investors held Broadwind shares during the Class Period. Preston Decl. at ¶ 17. The data demonstrates Broadwind's common stock was widely owned and traded by numerous market participants during the Class Period. *Id.* at ¶¶17-18.

Second, several securities analysts covered Broadwind's stock during the Class Period, including Macquarie Research, JPMorgan and Raymond James.[5] Preston Decl. at ¶ 19. Moreover, multiple research services, including Global Market Direct, Riskmetrics, Thomson Street Events and DataMonitor, provided transcripts and technical data through published reports on Broadwind. *Id.* These research services followed Broadwind's financial performance and prospects and issued recommendations on its stock. *Id.* Broadwind also was required to make, and made, regular SEC filings which reported important information to the market, including business conditions affecting the Company's financial performance and other matters affecting its stock price. *Id.* at ¶ 23.

---

[4]  In order to address specifically the relevant factors identified in *Cammer*, Plaintiffs submit the Declaration of Candace Preston as Exhibit 1. Ms. Preston is an experienced and widely-recognized financial expert.

[5]  Although the *Cammer* decision does not quantify what constitutes a "significant" number of analysts, the First Circuit Court of Appeals has held that just one analyst is sufficient. *See In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 514-18 (1st Cir. 2005).

Third, over 300 market makers participated in making a market in Broadwind common stock. Preston Decl. at ¶ 26. Moreover, for every month during the Class Period except the first one, Broadwind stock traded on the NASDAQ Global Select Market, an exchange with "the highest initial listing standards of any exchange in the world." *Id*. at ¶ 25 (quoting http://www.nasdaq.com/about/Top_Tier_Splash.stm). The NASDAQ Global Select Market is a national securities exchange that numerous courts have recognized as an efficient market. *See, e.g., In re Initial Public Offering Sec. Litig.,* 243 F.R.D. 79, 91 and n. 97 (S.D.N.Y. 2007) (NASDAQ is "an open, developed and generally efficient securities market"); *In re Accredo Health, Inc. Sec. Litig.*, No. 03-2216 DP, 2006 WL 1716910, at *8 (W.D. Tenn. April 19, 2006) ("based on this court's research, the overwhelming case authority holds that securities listed on the NASDAQ trade in an efficient market") (citing cases); *In re Retek Inc. Sec. Litig.,* 236 F.R.D. 431, 437 n.3 (D. Minn. 2006) ("Some courts assume market efficiency based solely on the fact the security trades on NASDAQ."); *Levine v. SkyMall, Inc.,* No. CIV-99-166-PHX-ROS, 2002 WL 31056919, at *4 (D. Ariz. May 24, 2002) (recognizing the "presumption that the NASDAQ is an efficient market for all of the securities traded on it"); *see also In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 634 (3d Cir. 2011) ("[T]he listing of a security on a major exchange such as the NYSE or the NASDAQ weighs in favor of a finding of market efficiency.") (citations omitted); Preston Decl. at ¶27.

Fourth, although the Company filed a Form S-1 during the Class Period, Ms. Preston determined that the market's response to material, new information indicates that the requirement to file a Form S-1 did not impede the efficiency of the market for Broadwind common stock. Preston Decl. at ¶ 29.[6]

---

[6] This factor's prominence may be due more to tradition than its value. *In re Countrywide Financial Corp. Sec. Litig.*, 273 F.R.D. 586, 613 n. 82 (C.D. Cal. 2009). Nevertheless, there is no

Fifth, and most importantly, facts show a rapid cause-and-effect relationship between certain unexpected corporate events or financial releases and an immediate response in Broadwind's stock price. This is the most telling indication of market efficiency. Preston Decl. at ¶ 30. In particular, Ms. Preston performed a regression analysis which included 250 observations encompassing the daily returns for Broadwind Common stock from March 16, 2009 through March 11, 2010. *Id*. at ¶ 35. In doing so, Ms. Preston examined certain dates on which she expected the news that was announced might cause a significant price reaction. *Id*. at ¶ 37. Ms. Preston found that when important, unexpected news about Broadwind was released, the price of Broadwind stock moved in a directionally appropriate way by a statistically significant amount. *Id*. at ¶¶38-42. For example, Ms. Preston found statistically significant movement of Broadwind's stock price in reaction to important, unexpected news on March 18, 2009, April 8, 2009, June 26, 2009, January 6, 2010, March 12, 2010 and March 31, 2010. *Id*. "A cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price . . . is the essence of an efficient market and the foundation for the fraud on the market theory." *Cammer*, 711 F. Supp at 1287; *Xcelera*, 439 F.3d at 512-13; *see also In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 634 (3d Cir. 2011) ("[B]ecause an efficient market is one in which 'information important to reasonable investors ... is immediately incorporated into stock prices,' [citation omitted], the cause-and-effect relationship between a company's material disclosures and the security price is normally the most important factor in an efficiency analysis."). Indeed, "the best evidence of an efficient market is empirical evidence that a share price quickly changes to reflect new information." *Northfield*, 267 F.R.D. at 548.

After performing the regression analysis, an analysis of the other *Cammer* factors, and the additional factors set forth in *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001),

---

requirement that all the *Cammer* factors be met. *Xcelera.com*, 430 F.3d at 518 ("there is no 'magic' number of factors for determining efficiency").

Preston Decl. at ¶ 14, 44-46, Ms. Preston stated her opinion that during the Class Period the market for Broadwind stock was efficient. *Id.* at ¶ 51.

In short, Plaintiffs have demonstrated that Broadwind stock traded in an efficient market during the Class Period. Thus, reliance is presumed and Plaintiffs satisfy the "predominance" requirement.

### 2. A Class Action Is Superior to Other Available Means of Adjudication.

Rule 23(b)(3) also requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The following matters are pertinent to this finding:

> A. Class members' interests in individually controlling the prosecution or defense of separate actions;
>
> B. Extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> C. Desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> D. The likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "Certifying a class is the 'superior' way to resolve a case where the 'class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Roth*, 238 F.R.D. at 607 (citing *Amchem,* 521 U.S. at 615, 117 S.Ct. 2231 (internal citations omitted)).

As compared to entertaining thousands of individual actions brought by class members, consideration of each of these factors strongly favors class certification. Securities actions like this easily satisfy the superiority requirement of Rule 23 because absent a class action, Defendants, and the Court, potentially face thousands of individual lawsuits, all arising out of the

same set of operative facts. The resolution of common issues alleged in one class action will result in an efficient use of judicial resources and a single outcome that is binding on Defendants and class members alike.

Furthermore, any administrative difficulties in handling potential individual issues that may arise in this litigation are less burdensome than the problems which are likely to arise in administering hundreds or thousands of separate actions. Moreover, any individual class member would be unlikely to prosecute his or her own action because the damages they would seek on an individual basis are less than the significant costs of prosecuting their own case to conclusion. *See In re Bank One*, 2002 WL 989454, at *8. ("Class members will benefit from class treatment because litigation costs are high and it is, therefore, unlikely that shareholders will prosecute individual claims. . . . A class action is a superior means to adjudicate claims of class members who would be overwhelmed by Defendants' enormous resources if they attempted to prosecute their individual claims.") (internal citations omitted).

The violations of the federal securities laws by Defendants caused economic injury to a large number of investors, making the cost of pursuing individual claims against Broadwind impracticable. The litigation of this controversy as a class action will adequately protect the interests of the class members. In contrast, the "alternative" to a class action – thousands of separate individual actions – offers no practical recourse for most class members, and would indisputably burden the judicial system.

## IV. CONCLUSION

For the reasons discussed above, this action meets the requirements for class certification. Accordingly, an Order should be entered: (i) certifying this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (ii) appointing Pehlke and

Grothues as class representatives; and (iii) appointing Federman & Sherwood as class counsel and James T. Crotty & Associates as liaison counsel for the class.

DATED: June 22, 2012                                    Respectfully submitted,

                                                       /s/ William B. Federman
                                                       William B. Federman
                                                       Jennifer S. Montagna
                                                       FEDERMAN & SHERWOOD
                                                       10205 N. Pennsylvania Avenue
                                                       Oklahoma City, OK 73120
                                                       Telephone: (405) 235-1560

                                                       *Lead Counsel for Plaintiffs*

                                                       James T. Crotty
                                                       JAMES T. CROTTY & ASSOCIATES
                                                       208 S. LaSalle St., Suite 1750
                                                       Chicago, IL 60604
                                                       Telephone: (312) 623-1599

                                                       *Liaison Counsel for Plaintiffs*

                                                       Samuel H. Rudman
                                                       Joseph Russello
                                                       Andrea Y. Lee
                                                       ROBBINS GELLER RUDMAN
                                                         & DOWD LLP
                                                       58 South Service Road, Suite 200
                                                       Melville, NY 11747
                                                       Telephone: (631) 367-7100

                                                       *Additional Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, William B. Federman, one of Plaintiffs' attorneys, hereby certify that on June 22, 2012, service of the foregoing Plaintiffs' Motion for Class Certification was accomplished pursuant to ECF as to Filing Users and in compliance with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/ William B. Federman      