**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ARTHUR L. BRASHER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 11-CV-0991 |
| v. | ) |
| | ) Honorable James B. Zagel |
| BROADWIND ENERGY, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Defendants Broadwind Energy, Inc. ("Broadwind") and J. Cameron Drecoll (collectively, "Defendants") respectfully submit this reply memorandum of law in support of Defendants' Motion for Protective Order ("Motion" or "Mtn."), seeking a protective order limiting the scope of discovery to the remaining claim in this matter and precluding Plaintiffs' depositions of third parties Clipper Windpower, LLC ("Clipper") and General Electric ("GE").

## INTRODUCTION

Following the Court's decision on the Defendants' Motion to Dismiss, the remaining claim in this case is whether Defendants fraudulently delayed the impairment testing and reporting of Broadwind's intangible assets. *Brasher v. Broadwind Energy, Inc.*, No. 11 CV 991, 2012 WL 1357699, at *25 (N.D. Ill. Apr. 19, 2012) ("Opinion" or "Op.") (Dkt. # 84). And that remaining claim revolves around Defendants' knowledge, understanding, and state of mind regarding that testing during the relevant time period. (*See id.* at 4:1-4 ("[B]asically, you have presumably one defendant, a decisionmaker, and allegations as to why he knew he was taking too long to do [the impairment testing]. I don't think that's a lot of people involved.").) In other words, the issues to be litigated concern the nature of Broadwind's intangible asset impairment

analysis, when it was conducted, what the key decisionmakers at Broadwind knew about this analysis, and when they knew it. As the Court has explained, that remaining claim "define[s] the ambit of the discovery that's to be permitted." *See* Transcript of Proceedings, April 5, 2012 at 3:23-24 ("Apr. 5 Tr.") (Mtn. Ex. A)).

Plaintiffs' proposed depositions do not relate to those issues. To the contrary, Plaintiffs seek testimony about "internal" financial information and analysis prepared by Broadwind's customers (Clipper and GE), without regard to whether any of that information was conveyed to Broadwind itself. Indeed, Plaintiffs go so far as to acknowledge that they are seeking information that Broadwind ***was not even aware of during the relevant time period and may not have learned of until discovery in this litigation***. (*See* Federman Decl. at ¶ 5 (documents produced by Clipper and GE reveal facts that "Broadwind might not have known until Clipper and GE produced documents in this action.").) In this regard, Plaintiffs repeatedly distinguish between purely internal Clipper and GE information, on the one hand, and Broadwind's knowledge of problems regarding its relationships with Clipper and GE, on the other hand, pronouncing the latter to be "a separate matter." (*Id.* at ¶¶ 11, 17.) But Plaintiffs have it backwards. Given the Court's ruling on the Motion to Dismiss, Defendants' knowledge, understanding, and state of mind regarding intangible assets and impairment testing is hardly a "separate matter" – it is ***the*** remaining matter in this case.

As the proponents of third party discovery, Plaintiffs have an obligation to ensure that they do not impose undue burden or expense on a person subject to a subpoena. Fed. R. Civ. P. 45(c)(1); *see also* Fed. R. Civ. P. 26(b)(2)(C)(ii). They likewise may not seek discovery that is available "from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). In this regard, the relevance of the information sought by the

subpoena is a factor to be considered by the court when assessing whether the subpoena constitutes an undue burden. *See, e.g., Mfr. Direct, LLC v. Directbuy, Inc.*, No. 2:05-CV-451, 2007 WL 496382, at *3 (N.D. Ind. Feb. 12, 2007).

Here, the information Plaintiffs seek is of little to no relevance to the remaining issue in this case, and its value is outweighed by the burden that would be imposed on Broadwind's customers and Defendants themselves. As such, the Court should exercise its authority under Federal Rule of Civil Procedure 26(b)(2)(C) and enter a protective order limiting the scope of discovery and precluding the depositions of Clipper and GE. In the alternative, the Court should enter an order delaying any depositions of Clipper and GE until after the completion of party depositions, subject to a showing by Plaintiffs that there is a substantial need for such testimony that cannot otherwise be met without undue hardship.

## ARGUMENT

### I. THE COURT SHOULD ENTER A PROTECTIVE ORDER WITH RESPECT TO THE PROPOSED DEPOSITIONS.

#### A. Defendants Are Entitled To A Protective Order Limiting The Scope Of Discovery.

As an initial matter, Plaintiffs contend that Defendants lack "standing" to object to discovery sought from Clipper and GE. This argument is incorrect for at least two reasons.

In the first place, Plaintiffs rely on cases involving motions to quash under Rule 45. *See, e.g.*, *Countryman v. Cmty. Link Fed. Credit Union*, No. 1:11-CV-136, 2012 WL 1143572 (N.D. Ind. Apr. 3, 2012); *Hunt Int'l Res. Corp. v. Binstein*, 98 F.R.D. 689 (N.D. Ill. 1983). But that is not what Defendants seek here. Instead, Defendants are seeking a protective order pursuant to Rule 26(b)(2)(C). It is firmly recognized in this Circuit that district courts have broad inherent authority over the appropriate scope of discovery in cases before them, and they are empowered to limit third party discovery, upon motion by a party, under this rule. *See, e.g., Mfr. Direct,*

*LLC v. Directbuy, Inc.*, No. 2:05-CV-451, 2007 WL 496382, at *3 (N.D. Ind. Feb. 12, 2007)

("The weight of authority in this circuit, and others, reads Rule 26's broad grant of authority over

discovery matters and its protection of any 'party or person' to permit [a party's] motion [to

quash subpoenas served on third parties]."); *Perry v. Best Lock Corp.*, No. 98-C-0936-H/G, 1999

WL 33494858, at *1 (S.D. Ind. Jan. 21, 1999) (holding that party has "a right to argue . . . that

the court should exercise its power to control the scope and cost of discovery in this case");

*Cusumano v. NRB, Inc.*, No. 96-C-6876, 1998 WL 673833, at *4 (N.D. Ill. Sept. 23, 1998)

(holding that party could object to third party subpoena by seeking a protective order pursuant to

Rule 26).

In any event, however, as Plaintiffs acknowledge, a party may object to a subpoena

served on a third party where "the subpoena infringes upon the movant's legitimate interests."

*U.S. v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982).[1] That is true here.  Broadwind has a

legitimate interest in its ongoing relationships with two of its significant customers, Clipper and

GE.  Allowing its customers to be inconvenienced by defending against overreaching subpoenas

in this case will harm Broadwind's relationship with these important customers.  Furthermore,

Defendants have an interest in ensuring that the scope of discovery in this litigation is consistent

with the claim this Court has allowed to proceed – *i.e.*, what Defendants knew regarding

impairment testing in late 2009 and early 2010.  (*See* Apr. 5 Tr. at 3:17-25.)  Because Defendants

---

[1] Plaintiffs' attempt to discredit *Raineri* as merely a criminal case is not persuasive, particularly since courts in this Circuit have regularly followed *Raineri* in the civil context.  *See Phipps v. Adams*, No. 3:11-CV-147, 2012 WL 3074047, at *3 (S.D. Ill. July 30, 2012) (relying on *Raineri* and noting that "Plaintiff has standing to seek enforcement of the order because he has an interest in the administration of the legal proceeding" before granting plaintiff's motion to quash subpoena); *Farmer v. Senior Home Companions of Ind.*, No. 1:08-CV-0379, 2009 WL 564193, at *1 n.1 (S.D. Ind. Mar. 5, 2009) (relying on *Raineri* and noting that "Defendant's relationship with its clients is a legitimate interest" before granting defendant's motion to quash subpoena).

have multiple legitimate interests that are implicated by Plaintiffs' attempt to depose GE and Clipper, Defendants may object to those subpoenas and the Court should rule on the Motion.[2]

Plaintiffs' argument to the contrary suggests that they believe the appropriate course would be for Clipper and GE to file separate motions to quash in two different district courts – California and Pennsylvania (where Clipper and GE are located, respectively). That would make little sense. It would hardly be an efficient use of judicial or party's resources to litigate this common issue in two separate federal courts, neither of whom have any prior familiarity with this case. And, notably, the transfer of motions to other district courts is "highly disfavored in this Circuit." *Morrison v. TYB Int'l, Inc*., 2010 WL 1752579, *3 n. 1 (S.D. Ill. April 30, 2010) (*citing In re Orthopedic Bone Screw Prods. Liab. Litig*., 79 F.3d 46, 48 (7th Cir. 1996)). Given the Court's inherent authority to supervise discovery in this matter pursuant to Rule 26, there is no reason why this Court should not consider and rule on the issue presented by the proposed third party depositions.

**B.     The Discovery Sought Is Beyond The Permissible Scope Of Discovery.**

**1.     The Federal Rules Permit this Court to Limit Discovery.**

As Defendants demonstrated in their Motion, the Federal Rules permit a court to limit the extent of discovery if it determines it is not relevant or, even if relevant, the burden and expense of the proposed discovery outweighs its likely benefit, or if the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive. (Mtn. at 3; Fed. R. Civ. P. 26(b)(2)(C); *see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681-82

---

[2] Plaintiffs' reliance on the Court's opinion in *Wi-Lan, Inc. v. LG Electronics, USA, Inc*., No. 10 CV 7721, 2011 WL 148058 (N.D. Ill. Jan. 18, 2011) is unavailing. In that case, the Court noted that the plaintiff, which had not served the subpoenas, had specifically disclaimed any interest in them and did not even take a position as to whether they were proper. *Id*. at *3. Under those circumstances, the Court declined to consider the plaintiffs' submission in connection with a motion to quash filed by a non-party. *Id*.

(7th Cir. 2002); *Itex, Inc. v. Westex, Inc.*, No. 05 CV 6110, 2011 WL 856583, at *2 (N.D. Ill. Mar. 9, 2011).) Moreover, the Federal Rules impose an obligation on Plaintiffs, enforceable by the courts, to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1); *see also Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927-28 (7th Cir. 2004) (quashing a subpoena that was founded on the mere possibility that information obtained could be used for impeachment); *Countryman*, 2012 WL 1143572, at **3-5 (granting in part a motion to partially quash a subpoena because the plaintiff did not attempt to obtain the same documents from the defendant and there was no indication the non-party possessed the information plaintiff sought). Indeed, Plaintiffs themselves acknowledge that a court may limit discovery when "the requested discovery is of such *marginal relevance* that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." (Pl. Opp. at 7) (*quoting Teton Homes Europe v. Forks RV,* No. 1:10-CV-33, 2010 WL 3715566, at *2 & n.4 (N.D. Ind. Sept. 14, 2010) (emphasis added).)

Defendants do not dispute that the Federal Rules allow for broad discovery. Defendants simply assert that there are some limits to what is discoverable, particularly with respect to third parties. The cases Plaintiffs cite do not undermine Defendants' position. For example, the court in *Teton Homes* noted the limits of discovery in denying a motion to quash and a motion for a protective order regarding discovery against a third party, but it did so only because it lacked a basis for determining the material was not relevant. 2010 WL 3715566, at *2 & n.4. Likewise, the court in *Teed v. JT Packard & Associates, Inc.*, stressed that "[d]espite the general breadth of discovery, the Court may limit discovery where the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive, or the burden or

expense of the proposed discovery outweighs its likely benefits."  No. 10-MISC-23, 2010 WL

2925902, at *2 (E.D. Wis. July 20, 2010).  And neither *Rawat v. Navistar Int'l Corp.*, 2011 WL

3876957 (N.D. Ill. Sept. 1, 2011), or *Schaap v. Executive Indus. Inc*, 130 F.R.D. 384 (N.D. Ill.

1990), even involve third party discovery at all, and therefore neither addressed a subpoenaing

party's obligations to avoid unnecessary burden and expense under Rule 45.  In short, the cases

cited by Plaintiffs demonstrate that while discovery may be broad, there are limits, particularly

when third parties are involved.  As discussed below, the proposed depositions here go beyond

those limits.

### 2. The Discovery Plaintiffs Seek is Beyond the Permissible Scope of Discovery in this Case.

This is a securities fraud case alleging claims under Sections 10(b) and 20(a) of the

Exchange Act.  An essential element of the asserted claims is Defendants' *scienter*, or intent to

defraud.  *See Foss v. Bear, Stearns & Co., Inc.,* 394 F.3d 540, 541 (7th Cir. 2005) ("There is no

violation of § 10(b) without fraud and no fraud without deceit.").  As this Court has already

made clear, the remaining claim in this case is whether Defendants fraudulently delayed the

impairment testing and reporting of the value of Broadwind's intangible assets.  (Op. at *25.)  In

other words, the remaining issues in the case concern what impairment analysis was conducted,

when it was conducted, what the key decisionmakers knew about this analysis, and when they

knew it.

Given these relatively narrow issues – all of which turn on Defendants' conduct and state

of mind – Plaintiffs' efforts to seek further discovery from Clipper or GE on their "internal

financial information" (Pl. Opp. at 8) and "internal documents" (*id*. at 10) that were not shared

with Broadwind would impose a significant burden but convey no additional benefit to resolving

the remaining claim at issue, and thus should not be permitted.  *See* Fed. R. Civ. P. 26(b)(2)(C);

*see also Patterson*, 281 F.3d at 681-82. As Defendants explained, it would be significantly less burdensome (and much more sensible) to seek this information directly from Broadwind rather than burdening Broadwind or its customers by forcing them to prepare for and take additional depositions that can only yield secondhand information. Plaintiffs argue that taking deposition discovery of Broadwind alone "will provide only one side of the picture – Broadwind's side." (Federman Decl. at ¶ 9.) But it is only Broadwind's "side" of the picture that matters when determining whether "Broadwind and Defendant Drecoll engaged in deceptive practices with regards to the timing of the impairment write-down." (Op. at *25).

To be sure, the intangible assets at issue include contractual relationships with Clipper and GE, and the decline of the value of those relationships accounted for a portion of the impairment charges that Broadwind announced in March 2010. But that fact does not entitle Plaintiffs to discovery as to purely internal information from Clipper and GE regarding their views of the status of those contracts. Plaintiffs allege that Defendants knew that a substantial impairment charge was inevitable but that they fraudulently delayed testing and reporting the impairment information to their shareholders. (*See* Op. at *22.) The internal knowledge and beliefs of Broadwind's customers simply have no bearing on this issue: Defendants could not (and could not have been obligated to) take information into consideration when making decisions about conducting impairment testing and making disclosures of possible impairments if that information was purely internal to Broadwind's customers and never shared with Broadwind. *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 964 (N.D. Ill. 2010) (Defendants against whom securities fraud is alleged "cannot be liable for failing to disclose information of which they were unaware.").

Under these circumstances, the burden Plaintiffs would impose on Broadwind's

customers outweighs the likely benefit of the discovery Plaintiffs seek. Moreover, to the extent

Plaintiffs seek potentially relevant information from Clipper and GE, such as information about

Defendants' specific knowledge of problems with its relationships with these customers, it would

be more convenient, less burdensome, and less expensive to obtain that information directly from

Defendants at least in the first instance. For all of these reasons, this Court should limit

discovery pursuant to Rule 26(b)(2)(C) by entering a protective order precluding Plaintiffs'

depositions of Clipper and GE, or, alternatively, delaying any depositions of Clipper and GE

until after the completion of party depositions, subject to a showing that there is a substantial

need for such testimony that cannot otherwise be met without undue hardship.

### C. Defendants' Motion Is Timely.

Plaintiffs contend that Defendants' Motion for Protective Order is premature because

Plaintiffs "have not yet elicited" any testimony from Clipper and GE. This claim is entirely

without merit. (*See* Pl. Opp. at 11.) Plaintiffs are seeking depositions of corporate

representatives on specific topics set forth in advance of the deposition pursuant to Rule

30(b)(6). Coupled with their Opposition Brief, there is simply no ambiguity as to what

testimony Plaintiffs are seeking to elicit, and it would obviously be far preferable for the Court to

resolve these issues now rather than interrupt the deposition to consult with the Court on a

question-by-question basis. Not surprisingly, the cases Plaintiffs cite address far different

circumstances than presented here, such as the deposition of an attorney based on grounds of

attorney-client privilege, *Hunt*, 98 F.R.D. at 690-91, and a government agency official based on

"decisional process privilege," *NLRB v. Modern Drop Forge Co.*, No. 96-3735, 1997 WL

120572, at *2 (7th Cir. Mar. 14, 1997). Neither case addresses a situation in which a Rule

30(b)(6) deposition of a third party exceeds the proper scope of discovery and would impose an unnecessary burden.[3]

>    **D.**    **In The Alternative, Any Depositions Of Clipper And GE Should Be Delayed Until After Party Discovery Is Complete And Plaintiffs Make A Showing Of A Substantial Need For Such Testimony.**

Finally, Plaintiffs' objections to the alternative relief Defendants propose is unavailing. First, Plaintiffs' claim that this deposition testimony will assist in their party depositions is not consistent with the nature of the testimony they seek to be eliciting – *i.e.*, information purely about the internal analyses done by Clipper and GE, as opposed to communications with Broadwind. Moreover, the argument proves too much – it is of course *always* possible that the testimony of a witness may necessitate the re-calling of a prior witness, and it would be far more preferable to start with parties first, since doing so may obviate the need for the third party depositions entirely. Plaintiffs' remaining arguments are simply variants on their claim that (i) Defendants lack standing – which, as explained above, they do have here – and (ii) that Plaintiffs seek relevant information – which, as discussed above, they do not.

### CONCLUSION

For the reasons discussed above and in Defendants' Motion for Protective Order, Defendants respectfully request that the Court enter a protective order limiting the scope of discovery to the remaining claim in this matter, thereby precluding Plaintiffs' depositions of third parties Clipper Windpower, LLC and General Electric. In the alternative, Defendants

---

[3] Plaintiffs' related complaint that Defendants have not attached an actual copy of a subpoena to GE is likewise without merit. The case that Plaintiffs cite, *Lovora v. Toys "R" Us-Delaware, Inc.*, No. 08-CV-292, 2008 WL 4830073, at *1 (E.D. Wis. Oct. 31, 2008), addressed a subpoena that had already been issued; it has no bearing on the instant matter where Plaintiffs have served a subpoena on a similarly-situated customer of Broadwind (which this Court has received), and informed Defendants of their intent also to depose GE, but not yet served GE with an actual subpoena. Notably, Plaintiffs have not stated that they have abandoned their stated intention to notice and schedule a deposition of GE.

respectfully request that the Court enter an order delaying any depositions of Clipper and GE until after the completion of party depositions, subject to a showing by Plaintiffs pursuant to Federal Rule of Civil Procedure 45(c)(3)(C) that there is a substantial need for such testimony that cannot otherwise be met without undue hardship.

November 19, 2012

/s/ James W. Ducayet
James W. Ducayet
Kristen R. Seeger
Meredith Jenkins Laval
David M. Baron
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000

*Counsel for Defendants Broadwind Energy, Inc. and J. Cameron Drecoll*

## <u>CERTIFICATE OF SERVICE</u>

I, James W. Ducayet, one of Defendants' attorneys, hereby certify that on November 19,

2012, service of the foregoing Reply Memorandum in Support of Defendants' Motion for

Protective Order was accomplished pursuant to ECF as to Filing Users and in compliance with

LR 5.5 as to any party who is not a Filing User or represented by a Filing User.


/s/ James W. Ducayet
James W. Ducayet