**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTHUR L. BRASHER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 11-CV-0991 |
| v. | ) | |
| | ) | Honorable James B. Zagel |
| BROADWIND ENERGY, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUBSTITUTION OF LEAD PLAINTIFF**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .....................................................................................................................1

ARGUMENT.............................................................................................................................2

       A.     Mr. Grothues Did Not Timely Move for Appointment as Lead Plaintiff................3

       B.     Mr. Grothues Has No Financial Interest in the Relief Sought by the Class. ...........4

       C.     Mr. Grothues Does Not Satisfy the Typicality or Adequacy Requirements
             of Rule 23.............................................................................................................7

            1.     Mr. Grothues Does Not Meet the Typicality Requirement of
                 Rule 23(a)(3). ..........................................................................................8

            2.     Mr. Grothues Is Not an Adequate Class Representative under
                 Rule 23(a)(4). ..........................................................................................9

CONCLUSION.........................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acticon AG v. China North East Petroleum Holdings Ltd.*,
    692 F.3d 34 (2d Cir. 2012)......................................................................................6

*Asher v. Baxter Int'l, Inc.*,
    505 F.3d 736 (7th Cir. 2007) ..................................................................................9

*Asher v. Baxter*,
    02-cv-05608, slip op. (N.D. Ill. Jan. 10, 2007) .....................................................7

*Asher v. Baxter*,
    02-cv-05608, slip op. (N.D. Ill. Sept. 7, 2006) ...................................................11

*Forth Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
    862 F. Supp. 2d 322 (S.D.N.Y. 2012)...................................................................3

*In re Baan Co. Sec. Litig.*,
    271 F. Supp. 2d 3 (D.D.C. 2002) .........................................................................11

*In re Bausch & Lomb Inc. Sec. Litig.*,
    244 F.R.D. 169 (W.D.N.Y. 2007)........................................................................5, 6

*In re Cardinal Health, Inc. Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio 2005) ........................................................................5, 6

*In re Comdisco Sec. Litig.*,
    150 F. Supp. 2d 943 (N.D. Ill. 2001) ...................................................................5, 6

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
    2004 WL 3314943 (N.D. Ohio May 12, 2004)....................................................5, 6

*In re Herley Indus., Inc.*,
    2010 WL 176869 (E.D. Pa. Jan. 15, 2010) ...........................................................3

*In re McKesson HBOC, Inc. Sec. Litig.*,
    97 F. Supp. 2d 993 (N.D. Cal. 1999) ...................................................................5, 6

*In re Milestone Scientific Sec. Litig.*,
    187 F.R.D. 165 (D.N.J. 1999)...............................................................................10

*In re Neopharm, Inc. Sec. Litig.*,
    2004 WL 742084 (N.D. Ill. Apr. 7, 2004) ..........................................................9, 10

*J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*,
    628 F.2d 994 (7th Cir. 1980) ................................................................................8

*Koos v. First Nat'l Bank of Peoria*,
496 F.2d 1162 (7th Cir. 1974) ...............................................................................8

*Lax v. First Merchs. Acceptance Corp.*,
1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...........................................................4

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
256 F.R.D. 586 (N.D. Ill. 2009)..............................................................................8

*Weisz v. Calpine Corp.*,
2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ...................................................5, 6

*Weizeorick v. ABN Amro Mortg. Group, Inc.*,
2004 WL 1880008 (N.D. Ill. Aug. 3, 2004) ...........................................................8

*Williams v. Balcor Pension Investors*,
150 F.R.D. 109 (N.D. Ill. 1993)..............................................................................8

**STATUTES AND RULES**

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................... passim

15 U.S.C. § 78u-4(e)(1) ...........................................................................................6

Fed. R. Civ. P. 23............................................................................................ passim

**OTHER AUTHORITIES**

S. Rep. No. 104-98 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 ..................9, 10

Defendants Broadwind Energy, Inc. ("Broadwind") and J. Cameron Drecoll (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' motion for substitution of Lead Plaintiff ("Motion.").

## INTRODUCTION

Plaintiffs' Motion stems from the appointed Lead Plaintiff's abdication of his responsibilities within the context of an ever-evolving cast of plaintiffs and lawyers in this case. Jerry Pehlke, Jr. previously represented that he would be willing to "serve as a representative party on behalf of the class" including "providing testimony at deposition and trial." (Dkt. # 95-2 at 2-A.) However, when Defendants sought the production of documents and a deposition, he became "unresponsive" and failed to "respond[] to [counsel's] numerous inquiries." (Dkt. # 111 at 2.) As a consequence, Mr. Pehlke is longer seeking appointment as class representative (Dkt. # 116), and has now formally withdrawn as the Lead Plaintiff, to which Defendants do not object (Dkt. # 120). In addition, however, the Lead Counsel has tendered a "substitute" proposed Lead Plaintiff, Brian M. Grothues, to which Defendants do object.

This presents an unusual procedural situation. As Plaintiffs concede, the Private Securities Litigation Reform Act of 1995 ("PSLRA") does not provide for the substitution of a new Lead Plaintiff when the previously certified Lead Plaintiff withdraws. And Mr. Grothues has already moved for class certification, which Defendants vigorously oppose. In this regard, Defendants have taken Mr. Grothues's deposition and filed a detailed Memorandum in Opposition ("Memorandum in Opposition") (Dkt. # 122.) For numerous reasons set forth in the Memorandum in Opposition, Mr. Grothues is neither typical nor an adequate class representative under Rule 23(a)(3) and (4), and he has also failed to establish that common issues would predominate, particularly on the issue of reliance, as required under Rule 23(b)(3). As such, no class can be certified in this case. This would appear to render the issue of Lead Plaintiff moot.

In any event, however, the few courts that have faced the situation presented here – the proposed "substitution" of an appointed Lead Plaintiff – have uniformly examined whether the newly proposed Lead Plaintiff satisfies the requirements set forth in the PSLRA to serve as Lead Plaintiff in the first instance. *See generally* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Here, if the Court decides to entertain this Motion (as opposed to denying Plaintiffs' Motion for Class Certification), Mr. Grothues should not be "substituted" because he does not satisfy the requirements set forth in the PSLRA. Most significantly, Mr. Grothues does not have any financial interest in this litigation because he did not suffer a cognizable loss as a result of his investments during the putative class period. In addition, for all of the reasons already detailed in Defendants' Memorandum in Opposition, and which are summarized below, Mr. Grothues does not "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc), because he is neither a typical nor adequate representative of the class.[1] Plaintiffs' Motion should therefore be denied to the extent it seeks "substitution" of Mr. Grothues as Lead Plaintiff.

## ARGUMENT

Mr. Grothues does not satisfy the PSLRA's requirements for appointment as Lead Plaintiff. The PSLRA requires the appointment of a Lead Plaintiff who is the person or persons who are the "most adequate plaintiff." The statute creates a rebuttable presumption that

> the most adequate plaintiff in any private action arising under this
> chapter is the person or group of persons that –

---

[1] Given the interconnection between the PSLRA's Lead Plaintiff provisions and Rule 23, and in the interest of brevity, Defendants have attempted to summarize their arguments with respect to areas of overlap, and respectfully refer to and incorporate by reference their Memorandum in Opposition for a more complete statement of the reasons why Mr. Grothues does not "otherwise satisf[y] the requirements of Rule 23." (*See* Mem in Opp., Dkt. #122 at 5-14.)

> > (aa) has either filed the complaint or made a motion in response to a notice [published to potential class members] . . . ;
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that "the presumptively most adequate plaintiff - (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. § 78u-4(a)(3)(B)(iii)(II). Although the statute indicates that the presumption may be rebutted "by a member of the purported plaintiff class," *id.*, courts have permitted defendants to raise objections to newly proposed Lead Plaintiffs during the course of the case, "[g]iven the potential for prejudice to defendants when [L]ead [P]laintiffs are substituted after years of litigation." *In re Herley Indus., Inc.*, 2010 WL 176869, at *2 (E.D. Pa. Jan. 15, 2010) (permitting defendants to be heard on plaintiffs' motion for substitution of Lead Plaintiff); *see also Forth Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 325 (S.D.N.Y. 2012) (same).

As discussed below, not only does Mr. Grothues fail to satisfy any of the three elements necessary to establish the presumption, he also meets both elements that would rebut that presumption. He is therefore not the "most adequate plaintiff" and may not be appointed as Lead Plaintiff.

### A. Mr. Grothues Did Not Timely Move for Appointment as Lead Plaintiff.

The first requirement for appointment as Lead Plaintiff is that the party "either filed the complaint or made a motion in response to a notice [published to the class members]." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Any such motion must have been filed within 60 days of

publication of the notice, *id.* at § 78u-4(a)(3)(A)(i)(II), or, in this case, by April 12, 2011. Mr.

Grothues did neither. He did not file the original complaint; nor did he move for appointment as

Lead Plaintiff within the 60-day period provided by the PSLRA – despite the fact that the

certification Mr. Grothues provided to counsel is dated February 15, 2011, well before the

deadline for filing a Lead Plaintiff Motion. (Dkt. # 95-2, Ex. 2-B.) In fact, Mr. Grothues did not

even appear in this action until September 13, 2011 (Dkt. # 41),[2] more than two months after Mr.

Pehlke had been appointed as Lead Plaintiff (Dkt. # 39) and more than five months after the

expiration of the 60-day deadline.

### B. Mr. Grothues Has No Financial Interest in the Relief Sought by the Class.

The second requirement for appointment as Lead Plaintiff is that the party "in the

determination of the court, has the largest financial interest in the relief sought by the class." 15

U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Although courts have identified various factors in

connection with this inquiry, *see, e.g., Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036

(N.D. Ill. Aug. 11, 1997), it is firmly established that a party may not serve as Lead Plaintiff

where it did not experience a cognizable loss but actually may have experienced a net *gain* as a

result of its putative class period transactions. The reason for this rule is simple. In a traditional

securities fraud class action, plaintiffs allege both that they were induced to purchase at an

"artificially inflated" price and that they suffered loss when the alleged inflation was "removed"

from the stock price upon disclosure of the alleged fraud. That is the theory alleged by Mr.

Grothues. (Am. Compl. at ¶¶ 271-75.) However, under this logic, stockholders who both

purchase and sell prior to the "corrective disclosure" at the end of the class period may actually

have *profited* from the alleged fraud, rather than suffered a loss, when all of their transactions are

---

[2] Though Mr. Grothues did appear at that time as a named party to the amended complaint, he was not eligible for consideration as Lead Plaintiff because, at the time the Lead Plaintiff was appointed, he had neither filed a complaint nor moved for appointment as Lead Plaintiff.

considered together.

For this reason, courts have consistently rejected applications by "net gainers" to serve as Lead Plaintiff, finding them uniquely "ill-suited" to serve in that capacity. *See, e.g., In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173-74 (W.D.N.Y. 2007) (rejecting proposed Lead Plaintiff because as a net gainer it "may in fact have profited, rather than suffered, as a result of the inflated stock prices"); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (party that benefited from fraud could not serve as Lead Plaintiff); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) (declining to appoint two net gainers as members of group of Lead Plaintiffs because "proving damages and typicality will be the bête noir of these two entities"); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 WL 3314943, at *4 (N.D. Ohio May 12, 2004) (rejecting application of net gainers because they "may have benefitted from the alleged fraud" and thus "cannot establish the largest financial interest in the relief sought by the class"); *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *7 (N.D. Cal. Aug. 19, 2002) (rejecting application of net gainer because it "may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price"); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999) (rejecting the application of a stockholder who "arguably *profited* more from the fraud than it has been injured, possibly reducing its incentive to litigate"). At a minimum, apart from the lack of a financial interest in the case, a "net gainer" may be subject to "unique defenses that render such plaintiff incapable of adequately representing the class," *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. at 174 (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)), including, for example, a lack of standing by reason of the failure to have suffered any cognizable injury due to the alleged fraud.

Mr. Grothues is just such a "net gainer." His certification and the trading records reveal

that Mr. Grothues made several purchases between June 3, 2009, and November 2, 2009.  He

then sold all of these purchased shares by no later than January 7, 2010, and made a healthy

profit.  Mr. Grothues then made three additional purchases on January 19, February 22, and

March 12, 2010, and appears to have held these shares until at least February 15, 2011.[3]  In

connection with their opposition to Plaintiffs' Motion for Class Certification, Defendants' expert,

Dr. Alexander Aganin, performed a computation of the overall result of these trades, assuming

that (i) the shares purchased in January, February, and March 2010 were sold at the closing price

on March 12, 2010, the day on which the alleged corrective information was disclosed to the

market and (ii) the shares were sold on March 19, 2010, the end of the class period proposed by

Plaintiffs.  In either case, Mr. Grothues experienced a ***net gain*** on his trades during the putative

class period, not a loss.  (*See* Aganin Decl., Dkt. # 122-2 at ¶ 46.)

Under these circumstances, Mr. Grothues cannot be appointed as Lead Plaintiff.  Not

only does he not have the "largest financial interest" in the case, he occupies a position that is

potentially antagonistic to other shareholders and that forecloses him from serving as a Lead

Plaintiff.  *See, e.g., In re Bausch & Lomb Inc. Sec. Litig*., 244 F.R.D. at 173-74; *In re Comdisco*

*Sec. Litig.*, 150 F. Supp. 2d at 946; *In re Cardinal Health, Inc. Sec. Litig*., 226 F.R.D. at 308; *In*

*re Goodyear Tire & Rubber Co. Sec. Litig*., 2004 WL 3314943, at *4; *Weisz*, 2002 WL

32818827, at *7; *In re McKesson HBOC, Inc. Sec. Litig*., 97 F. Supp. 2d at 997.  At a minimum,

his status as a "net gainer" will undoubtedly give rise to the assertion of unique defenses, such as

---

[3] As discussed in Defendants' Memorandum in Opposition, it does not matter here whether a "last-in, first-out" (LIFO) or "first-in, first-out" ("FIFO") methodology is used, because Mr. Grothues did not purchase any shares before the class period and because he sold down his position to zero by January 7, 2010.  Nor does the so-called "bounce back" provision of the PSLRA, 15 U.S.C. § 78u-4(e)(1), apply. That is because the "bounce back" provision provides for a "cap on recoverable damages" where the stock price partially ***recovers*** from a decline upon a corrective disclosure and does not apply where, as here, the stock price continued to decline after the alleged "corrective disclosure."  *See, e.g., Acticon AG v. China North East Petroleum Holdings Ltd.*, 692 F.3d 34, 39-40 (2d Cir. 2012).

6

a lack of standing. In fact, as described below and set forth in more detail in the Memorandum

in Opposition, Mr. Grothues does not meet the requirements of Rule 23(a)(3) that his "claims or

defenses" are "typical of the claims and defenses of the class."[4]

> ### C. Mr. Grothues Does Not Satisfy the Typicality or Adequacy Requirements of Rule 23.

The third requirement for appointment as Lead Plaintiff is that the party "otherwise

satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(cc). As Plaintiffs admit, this requires that the Lead Plaintiff satisfy the

typicality and adequacy prongs of Rule 23(a)(3) and (4). (Pl. Mtn. at 6-7.) Additionally,

typicality and adequacy are also incorporated into the second prong of the Lead Plaintiff

analysis, as the PSLRA makes clear that a presumptively adequate Lead Plaintiff is disqualified

by proof that he or she would not fairly or adequately represent the class or that he or she would

be subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Whether typicality and

adequacy are considered as part of the initial determination of whether Mr. Grothues is the

presumptively most adequate plaintiff or are treated as factors that rebut that presumption,

however, makes no difference here. Mr. Grothues is neither typical nor adequate.

---

[4] In their Motion, Plaintiffs attempt to rewrite the language of the statute to suggest that the determination of the largest financial interest merely involves a ***comparative*** analysis of the financial interests of the class members who happen to seek appointment. (*See* Pl. Mtn. at 6 (adding bracketed language to subsection (bb)).) This is a misreading of the statute, which nowhere suggests that the applicant's financial interest should only be compared to that of other applicants. Indeed, courts have rejected the applications of potential Lead Plaintiffs who do not satisfy the PSLRA's requirements (including because they have insufficient financial interests) even when no other applicants had come forward. *Asher v. Baxter*, 02-cv-05608, slip op. (N.D. Ill. Jan. 10, 2007) is illustrative. There, the court explained that, "[g]iven their relatively meager holdings of [600 and 10,500] Baxter shares, [proposed lead plaintiffs] can hardly be viewed as the 'person or persons . . . with the largest financial interest in the relief sought by the class,' as envisioned by the PSLRA." Slip op. at 1. The court concluded that "[b]ecause no adequate lead plaintiff has stepped forward and the final deadline to do so has passed, any attempt to certify the proposed class would be doomed." *Id.* at 2. The case ultimately proceeded on behalf of two of the individual named plaintiffs.

### 1. Mr. Grothues Does Not Meet the Typicality Requirement of Rule 23(a)(3).

Mr. Grothues should not be appointed because his claims are not typical of those of the proposed class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); Fed. R. Civ. P. 23(a)(3). As discussed *supra* at Section B, Mr. Grothues suffered no economic loss and cannot show an injury-in-fact from the alleged fraud, and is therefore subject to a unique defense. As previously discussed, (Mem. in Opp., Dkt. # 122, at 5-8), where a proposed representative is subject to a unique defense, his claims are not considered to be typical of those of the class and he may not be appointed as a class representative under Rule 23(a)(4). *See, e.g., Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974); *see also Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 600 (N.D. Ill. 2009); *Weizeorick v. ABN Amro Mortg. Group, Inc.*, 2004 WL 1880008, at *5 (N.D. Ill. Aug. 3, 2004) ("Although there may be factual distinctions between the claims of the representative and the class members, colorable defenses unique to the named representative may destroy typicality as well as bring into question the adequacy of the named plaintiff."). In this regard, the defense need not be established at the class certification stage and need not even be a "sure-fire winner." *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 112 (N.D. Ill. 1993). Instead, it is enough that it will create enough of a unique distraction that the representation of the class will suffer. *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980).

That is the case here, and for this reason, Mr. Grothues does not "otherwise satisf[y] the requirements of Rule 23" for purposes of the presumption, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc), and the evidence would rebut any presumption that might apply, *id.* § 78u-4(a)(3)(B)(iii)(II)(bb) (presumption may be rebutted by proof that the party who is otherwise the most adequate plaintiff "is subject to unique defenses that render such plaintiff incapable of adequately

representing the class").

### 2. Mr. Grothues Is Not an Adequate Class Representative under Rule 23(a)(4).

In addition to his lack of typicality, Plaintiffs also have not demonstrated that Mr.

Grothues is an adequate class representative under Rule 23(a)(4). Although Mr. Grothues's

inadequacy is discussed in detail in Defendants' Memorandum in Opposition, (Mem. in Opp.,

Dkt. 122, at 9-14), the interplay between the purpose of the PSLRA and Rule 23(a)(4) bears

reiterating here. Importantly, Congress' motivation for requiring a Lead Plaintiff was to ensure

that securities class actions would no longer be lawyer-driven vehicles. *See, e.g.,* S. Rep. No.

104-98, at *4 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 683 (the role of the Lead Plaintiff

under the PSLRA is "to empower investors so that they – not their lawyers – exercise primary

control over private securities litigation"). As the Seventh Circuit has explained, "'Lead

plaintiffs' are supposed to counteract the dominance of lawyers over class-action suits; the

district judge should select a ***representative with a financial stake large enough to make***

***monitoring of counsel worthwhile***, and with the time and skills needed to make monitoring

productive. The idea is that securities suits then will proceed in the interest of investors rather

than the lawyers who appoint themselves to prosecute these actions." *Asher v. Baxter Int'l, Inc.*,

505 F.3d 736, 737 (7th Cir. 2007) (emphasis added).

The history of this case to date raises concerns that this is not happening here. As an

initial matter, the process by which Mr. Grothues is being proposed is reminiscent of the single

case within this Circuit addressing the procedure for replacing a Lead Plaintiff. *See In re*

*Neopharm, Inc. Sec. Litig.*, 2004 WL 742084 (N.D. Ill. Apr. 7, 2004). There, the court strongly

criticized Lead Counsel's effort to substitute a new Lead Plaintiff of the lawyer's choosing, a

maneuver nearly identical to what Plaintiffs here seek to do. As the court explained,

9

> only after a most adequate plaintiff is selected by the court is a
> plaintiff's choice for lead counsel considered. But in this case the
> court is confronted with nearly the opposite situation. Milberg
> Weiss has apparently deemed itself fit to choose whom it believes
> should be the most adequate plaintiff after Larson's withdrawal.

*Id.* at \*2.[5]

In addition, because Mr. Grothues's deposition was taken in connection with class

certification, this case affords an unusual opportunity at the Lead Plaintiff stage to observe Mr.

Grothues's actual monitoring of the litigation to date. And it is plainly not what Congress had in

mind. As described in more detail in the Memorandum in Opposition, Mr. Grothues does not

understand that he has any decision-making responsibility in his capacity as class representative

or Lead Plaintiff (Grothues Dep., Dkt. # 122-3 at 18:13-21, 21:19-24); he believes it is the

responsibility of his attorneys to make key decisions in the case (*id.* at 24:24-25:2 ("Q: Whose

responsibility is it to make key decisions? A: Key decisions? I assume the attorneys.")); and he

believes he has no say in how the case is being litigated (*id.* at 27:22-24 ("Q. Do you have any

say in how this case is being litigated? A. No.")). Moreover, contrary to the statutory scheme, it

appears to have been counsel who selected Mr. Grothues, not the other way around. (*Id.* at

22:22-23:4 (testifying that he did not select Lead Counsel); 20:18-20 (testifying that he was

selected as a class representative by counsel);[6] *see also* S. Rep. No. 104-98, at \*11 (The PSLRA

---

[5] Plaintiffs note that the law firm Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), who previously served as counsel for two parties who had originally sought appointment as Lead Plaintiff, "has been assisting in this case and supports the relief requested herein." (Pl. Mtn. at 5.) But once again Plaintiff has it backwards. It is irrelevant whether Robbins Geller, which has no court-approved role in this case, supports or opposes Mr. Grothues's appointment as Lead Plaintiff. What is relevant is whether other potential Lead Plaintiffs object, and whether Mr. Grothues satisfies the PSLRA's requirements and can adequately represent the interests of the plaintiff class.

[6] Notably, Mr. Grothues could not even identify the law firm of Robbins Geller or what role it was playing in the case. (Grothues Dep. at 26:2-16, 27:15-21.) But it is Mr. Grothues's responsibility to actively oversee the work of the lawyers in this case, and the involvement of additional counsel here may well be contrary to the interests of the class. *Cf. In re Milestone Scientific Sec. Litig.*, 187 F.R.D. 165, 176, 178 (D.N.J. 1999) (noting that appointment of multiple firms as lead counsel can "raise a number of

10

"is intended to permit the plaintiff to choose counsel rather than have counsel choose the plaintiff.").)

For all of these reasons, Mr. Grothues cannot satisfy the requirement that the Lead Plaintiff fairly and adequately represent the interests of the class, and the Motion should be rejected on this ground as well. *See, e.g., In re Baan Co. Sec. Litig.*, 271 F. Supp. 2d 3, 15 (D.D.C. 2002) (holding that previously appointed Lead Plaintiff could not adequately protect the interests of the class where Lead Plaintiff testified that he "made no decisions regarding the litigation, and that managing the litigation was entirely the responsibility of his attorneys" and where "the only continuous thread has been the law firms"); *Asher v. Baxter*, 02-cv-05608, slip op. at 6-12 (N.D. Ill. Sept. 7, 2006) (vacating previous orders appointing Lead Plaintiffs because previously appointed Lead Plaintiffs were "chosen by lead counsel and ha[d] ceded control of the litigation to them").

## CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court deny Plaintiffs' motion for substitution of Lead Plaintiff.

December 7, 2012

/s/ James W. Ducayet
James W. Ducayet
Kristen R. Seeger
Meredith Jenkins Laval
David M. Baron
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000

*Counsel for Defendants Broadwind Energy, Inc. and J. Cameron Drecoll*

---

concerns" such as "increased fees and costs" and "friction and a lack of coordination among counsel."). Mr. Grothues's failure to monitor such matters is yet another reason why he may not be appointed as Lead Plaintiff.

## CERTIFICATE OF SERVICE

I, James W. Ducayet, one of Broadwind Energy, Inc.'s attorneys, hereby certify that on December 7, 2012, service of the foregoing Defendants' Memorandum in Opposition to Plaintiffs' Motion for Substitution of Lead Plaintiff was accomplished pursuant to ECF as to Filing Users and in compliance with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/ James W. Ducayet
James W. Ducayet