**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARTHUR L. BRASHER, *et al.*, | ) | |
| | ) | Case No. 11-CV-0991 |
| Plaintiffs, | ) | |
| | ) | Honorable James B. Zagel |
| v. | ) | |
| | ) | |
| BROADWIND ENERGY, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF WAYNE R. ANDERSEN IN SUPPORT OF FINAL APPROVAL OF
THE SETTLEMENT AND PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND EXPENSES**

I, WAYNE R. ANDERSEN, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I submit this Declaration in support of the settlement of this action (the "Settlement") and motion for an award of attorneys' fees and expenses filed by Lead Plaintiff's counsel, Federman & Sherwood ("Lead Counsel"), Liaison Counsel James T. Crotty & Associates ("Crotty"), and additional counsel for the plaintiffs, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") (collectively "Plaintiffs' Counsel"). I have personal knowledge of the facts of this case, and, if called upon, could and would competently testify thereto.

2.      I am a mediator for JAMS and, as described below, presided over the mediation of this action at the request of the parties. I served as a judge of the United States District Court for the Northern District of Illinois for 19 years and as a trial judge of the Circuit Court of Cook County for seven years. During my tenure as a mediator and a judge, I have conducted thousands of settlement conferences and have brokered numerous settlements in a wide range of complex cases, including securities class action lawsuits.

3.      In this case, Plaintiffs' Counsel obtained a settlement consisting of $3.915 million in cash (the "Settlement Fund") for the benefit of a class of purchasers of Broadwind Energy, Inc. ("Broadwind") common stock, as defined in the Stipulation of Settlement, dated as of March 6, 2013. The claims were brought under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5. At the time of the mediation and the settlement, the only claims remaining concerned the timing of Broadwind's disclosure of an intangible asset and goodwill impairment charge predicated on a decline in value of certain customer relationships. Broadwind announced the impairment charge, most of which was due to intangible

assets, in March 2010, and plaintiffs alleged that public disclosure of the charge was intentionally delayed to allow Broadwind's January 2010 secondary offering of common stock to occur.[1]

4.    After the Court issued its opinion on the motion to dismiss, the parties engaged in document discovery. I understand that the plaintiffs conducted extensive document discovery of the defendants and various third parties, including Broadwind's outside auditor, valuation consultants, secondary offering underwriter and two largest customers, General Electric ("GE") and Clipper Windpower ("Clipper"). Among the documents reviewed by Plaintiffs' Counsel were accounting documents regarding the timing of the asset impairment charge and the process undertaken in considering whether and how to record the charge, as well as documents regarding the relationship between Broadwind and each of GE and Clipper. I understand that these documents were voluminous in nature, representing more than 234,000 pages.

5.    In August, 2012, I was retained by the parties to mediate a settlement of this action. The first mediation session was scheduled to take place on August 20, 2012, in Chicago, Illinois. In anticipation of the mediation, I asked the parties to each submit a mediation statement explaining the grounds for their positions on liability and damages. The parties provided detailed mediation statements to me, with citations to and submission of documents produced during discovery and other materials that they believed supported their respective positions, as well as an evaluation of the legal principles that they believed applied to their positions. After considering these submissions, I convened the mediation session on August 20, 2012, as scheduled.

6.    Present at the mediation were several representatives for the plaintiffs, defendants, and defendants' directors' and officers' ("D&O") liability insurance carriers. I allowed each side to

---

[1] On April 19, 2012, the Court dismissed all claims against all defendants except this claim against Broadwind and its CEO, J. Cameron Drecoll.

give brief presentations concerning the strengths and weaknesses of their positions, and the plaintiffs presented a view of their estimate of potential damages. I then spent time with each side to discuss my view of their respective positions. After a full day session, during which I spent most of my time caucusing with the parties, a resolution could not be reached. Nevertheless, I urged the parties to keep the lines of communication open to further discussions regarding settlement of the action, and I agreed to remain in contact with them in an effort to facilitate a resolution.

7.      As the parties resumed litigating the case, I continued to engage in discussions with each side in an effort to find common ground. Although plaintiffs had indicated that they believed they had meritorious claims, they also acknowledged that the sole remaining claim in the case – that Broadwind had fraudulently delayed the public disclosure of the results of its impairment testing to allow the secondary offering to proceed – would be difficult to prove at trial, assuming that the claim survived further proceedings.

8.      For example, one of the most complicated issues in the case was whether plaintiffs could establish that defendants had the intent necessary to support securities fraud, not least because defendants had argued that the question of *when* Broadwind should have recorded an impairment charge was a judgment call and cited evidence suggesting that the impairment analyses were not complete until after the offering. Defendants also cited evidence suggesting that immediately prior to the offering Broadwind, Broadwind's auditor, and Broadwind's valuation expert were unaware of any impairment issues. On the other hand, plaintiffs submitted evidence that they believed was supportive of defendants' knowledge, at an earlier date, that an impairment charge would have to be taken or was at least likely. The parties also sharply disagreed as to the amount of damages and loss causation with respect to those damages, with defendants citing studies by consulting firms and academics finding minimal stock price declines were typical in reaction to impairment

- 3 -

announcements. Thus, defendants strongly asserted that the majority of the Class's claimed damages were caused by other factors, including Broadwind's contemporaneous announcement of disappointing earnings, even absent the impairment charge, and a pessimistic outlook for the remainder of the year. Finally, at the time of the mediation and settlement, plaintiffs' motion for class certification was pending – although plaintiffs' financial expert opined that Broadwind common stock traded in an efficient market throughout the Class Period – the parties disagreed as to whether the market for Broadwind stock was efficient, particularly in the earlier parts of the Class Period. These concerns animated the parties' views of the case and my evaluation of plaintiffs' ultimate likelihood of success.

9. Subsequently, further negotiations took place as motion practice and depositions regarding class certification and other matters continued.

10. As discussions progressed, the parties decided to attend another mediation session. This session was scheduled for January 18, 2013, also in Chicago, Illinois. Again, representatives of the parties and the D&O carriers attended, and, again, I spent time with each side to discuss the strengths and weaknesses of the case from their perspective and my perspective. This second mediation did not immediately result in a settlement. Following the mediation session, however, I continued intense discussions with the parties in an attempt to reach a resolution. Several days after the close of the second mediation session, and in a final effort to broker a resolution, I gave the parties a "mediator's proposal" to accept or reject based on my views of the various aspects of the case, including potential liability and damages.

11. On January 23, 2013, the parties reached an agreement to accept the mediator's proposal and settle this action for $3.915 million, a figure that I believe takes into account the strengths and weaknesses of this case.

12.     As plaintiffs indicate in their supporting submissions, this amount represents a recovery of 17.6% of their most conservative assessment (of $22.2 million), and 10.9% of their most liberal estimate (of $35.8 million) in damages. In my opinion, the settlement achieved by plaintiffs provides a favorable result that fairly values the pros and cons associated with the further prosecution of this lawsuit. It is primarily for this reason that I believe that Plaintiffs' Counsel's request for an award of 33% of the Settlement Fund, and payment of expenses, is fair and reasonable.

13.     Further, after having reviewed Plaintiffs' Counsel's detailed billing entries and lodestar figures relating to work performed by Plaintiffs' Counsel, it is my opinion that the requested fee and expense award, if granted by the Court, would reasonably compensate them for services that they rendered wholly on contingency in a situation in which the class would likely not obtain any recovery were it not for their efforts. As their records reflect, Plaintiffs' Counsel expended a significant amount of time and resources on this matter.

14.     For example, leading up to the Settlement, Plaintiffs' Counsel expended over 3,000 hours valued at more than $1.5 million and incurred more than $145,000.00 in expenses in prosecuting and resolving this litigation. Specifically, as of February 22, 2013, Federman & Sherwood expended approximately 2124.20 hours, valued at nearly $1.16 million based on its normal billing rates, in performing its duties as Lead Counsel for plaintiffs. Federman & Sherwood's tasks in this litigation included, among others: (1) thoroughly investigating the case, including interviewing numerous former employees of Broadwind; (2) drafting the comprehensive amended complaint; (3) drafting responses to defendants' motions to dismiss; (4) pursuing discovery from third parties; (5) analyzing and reviewing over one hundred thousand pages of documents produced by Broadwind and third parties; (6) consulting with a damages and market efficiency

financial expert; (7) drafting a motion for class certification; (8) consulting with and advising investors, including the Lead Plaintiff; (9) preparing for and defending the depositions of Lead Plaintiff and plaintiffs' financial expert; and (10) preparing a detailed mediation statement and participating in multiple in-person and telephonic mediation sessions and subsequent negotiations.

15.     Similarly, as of February 22, 2013, Robbins Geller expended approximately 887 hours, valued at $405,660.00 based on its normal billing rates, in performing, among others, the following tasks: (1) assisting in preparing the amended complaint, drafting sections of the opposition to the motions to dismiss, and preparing document requests; (2) assisting in the review and analysis of more than 100,000 pages of documents produced by Broadwind's third-party auditor, Grant Thornton, and several thousand additional pages produced by Broadwind's third-party valuation firms, Valuation Research Corporation and Crowe Horwath LLP; (3) preparing the response to defendants' motion for a protective order concerning the scope of discovery; and (4) attending various proceedings in this case and participating in settlement discussions.

16.     I also understand that Liaison Counsel Crotty expended time and effort in furtherance of the action, including performing, among others, the following tasks: (1) assisting in developing plaintiffs' litigation strategy; (2) reviewing and assisting in the preparation of various court filings and litigation-related papers, including discovery demands and responses; (3) presenting argument in opposition to defendants' motion for a protective order; and (4) attending court proceedings.

17.     I further understand that since February 22, 2013, Plaintiffs' Counsel has devoted substantial time and incurred additional expenses in furtherance of the action, including but not limited to: (1) negotiating the details of the Settlement; (2) preparing the Stipulation of Settlement; (3) preparing the notice, proof of claim form, and summary notice; (4) working alongside the claims

administrator to effectuate proper notice of the Settlement; and (5) responding to questions from

class members seeking information about the Settlement.

18.     I have reviewed Plaintiffs' Counsel's fee request and am familiar with the factors

courts of the Seventh Circuit consider in determining whether fees requested in common fund cases

such as this are reasonable.

19.     After my review and consideration of the aforementioned facts and information, I

believe that the Settlement represents a fair and reasonable resolution of this case. I also believe that

Plaintiffs' Counsel's fee request of 33% of the common fund is fair and reasonable under the

circumstances.

Executed on May 24, 2013.

                                                _____
                                                WAYNE R. ANDERSEN